600 So.2d 59 (1992)
Martha C. FRAZIER
v.
Malcolm L. HARPER.
No. 91-C-1948.
Supreme Court of Louisiana.
May 26, 1992.
*60 Peter D. Carollo, Slidell, for plaintiff-applicant.
David R. Paddison, Covington and John J. Lee, Jr., New Orleans, for defendant-respondent.
DENNIS, Justice.
Delta Airlines substituted a new employee pension plan for a preexisting employee retirement program and granted employees credit in the new plan for time employed under the old. Malcolm L. Harper, a Delta employee, accepted the substitution and received credit for some nine years served under the old plan. Malcolm was married to Martha C. Frazier and a community property regime existed between them almost eight years of this time, but their marriage and community terminated prior to Delta's substitution of the new plan for the old one. Martha contends that she acquired an undivided interest in Malcolm's pension right under the new plan because her share of the old pension right, as well as Malcolm's share, was exchanged for the interest Delta established for Malcolm in the new pension plan. The trial court concluded that Martha had no interest in the new pension plan. The court of appeal affirmed. 582 So.2d 868 (La.App. 5th Cir. 1991). We reverse. The employee spouse's interest in the old plan acquired during the community regime was community property, of which the former spouses became co-owners upon termination of the community. A novation took place when, by the implied agreement of the employer and the employee, a new plan or set of pension rights and obligations was substituted for that previously existing between the parties. La.C.C. art. 1879-1887. The employee and his employer were not authorized to act for his former spouse in exchanging the entire pension right under the old plan for the new one, but the non-employee former spouse ratified the transaction in this suit by consenting to the obligation and accepting its benefits. La. C.C. art. 1843 (1984).
Martha C. Frazier and Malcolm L. Harper were married in 1955, judicially separated in 1970, and divorced in 1971. On March 16, 1971, by authentic act, the parties entered into a partition of the community assets. The agreement did not partition the community interest in a pension plan that had been established by Malcolm's employer, Delta Airlines.
Documentary evidence of neither the new nor the old pension plan was introduced, but the testimony educed at trial reflects the following relevant facts. Malcolm has been employed by Delta Airlines since 1962. At the time of the termination of the community, Malcolm was entitled to credit for years served under Delta's pre-ERISA employee pension planthe first pension plan involved in this case. The plan did not vest until retirement and was contingent upon numerous factors, none of which occurred. On February 1, 1972, Delta terminated the old plan and substituted for it a new defined benefits pension plan which qualified under the provisions of ERISA. Malcolm had not been required to make contributions under the old plan, and when it was dissolved, no refund was made to Malcolm.
The new plan provided for a defined benefit of 60% of the employee's "final average compensation" comprised of the average of the highest three consecutive years of pay in the last ten years before retirement. Retirement is mandatory at age 60 and the plan requires twenty-five years of service for full benefits. The second plan provides a credit for years of service under the first plan which was ended in 1972. *61 Using these years of service under the first plan, Malcolm is qualified to retire early under the provisions of the second plan. However, if Malcolm retires early, he would receive a penalty of three percent (3%) reduction per year for each year of service less than twenty-five. In 1996, when Malcolm attains the age of 60, he will receive full benefits under the second pension plan.
On June 9, 1989, Martha Frazier sued for a supplemental partition specifically alleging a community interest in the defendant's present pension plan. The trial court dismissed the plaintiff's petition finding that "there was no pension fund in existence on September 30, 1970 that had any value or could be attributable to the community that ceased to exist on September 30, 1970 and was duly partitioned on March 16, 1971." The court of appeal affirmed. 582 So.2d 868 (La.App. 5th Cir.1991). We granted Martha's application for certiorari.
An employee's contractual pension right is not a gratuity but a property interest earned by him. Hare v. Hodgins, 586 So.2d 118, 122 (La.1991); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976). To the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. La.C.C. art. 2338; Hare v. Hodgins, supra; Sims v. Sims, 358 So.2d 919 (La.1978). Consequently, when the community is terminated, the employee's spouse is entitled to be recognized as the owner of one-half of the value attributable to the pension or deferred compensation right earned during the existence of the community. La.C.C. art. 2336; La.R.S. 9:2801; Hare v. Hodgins, supra, and authorities cited therein.
Malcolm and Martha had been married for approximately seven years when he was hired by Delta in 1962. He joined Delta's original pension plan almost immediately and began to earn pension rights soon thereafter. The parties stipulated that Malcolm served as an employee under that pension plan for a period of seven years, nine months, and eight days during the existence of the community. Because the community ended in 1970 and the original pension plan was terminated in 1972 it is evident that most of the pension rights earned under that plan were community property.
Although the record is sparse, it is unequivocal from the testimony and the circumstantial evidence that Delta Airlines intended to extinguish the original employee pension plan by the substitution of the new one in 1972. That the employees agreed to the substitution is also sufficiently clear: there is no evidence that anyone objected to the substitution; the employees were granted credit for employment experience under the old plan; the benefits under the new plan are equal to or greater than those under the old plan; and the position of all pension right holders was enhanced by the fact that the new pension plan is, according to the parties, ERISA qualified whereas the old plan was not. Consequently, an objective novation took place when, by an implied agreement between Delta and its employees, the existing set of rights and obligations under the old plan was extinguished and a new set was created and substituted therefor by the new pension plan. La.C.C. arts. 1879, 1881.
As a co-owner or co-obligee of the original pension right or obligation, Martha acquired a comparable interest in the new pension obligation when it was substituted for the old pension plan and she ratified the transaction. Malcolm's argument that her interest expired while his survived and was enhanced by the substitute pension plan has no basis in law, justice or reason.
After termination of the community property regime, the interests of the former spouses in anything held in indivision are treated as coownership and the provisions of law governing coownership apply unless there is contrary provision of law or juridical act. La.C.C. art. 2369.1 (1990), and Comment thereto; K. Spaht & L. Hargrave, Matrimonial Regimes, 16 La.Civil Law Treatise, Sec. 7.19, at 317 (1989). In the present case, we are not aware of any applicable law to the contrary, and no evidence *62 has been introduced of a juridical act in variance with the provisions of law governing coownership.
Consequently, although Malcolm had the right to alienate or encumber his share of the pension rights held in indivision, the consent of the other co-owner, Martha, was required for the alienation or encumbrance of the entire thing held in indivision. La.C.C. art. 805 (1991). The evidence is clear that Martha did not consent to Delta Airlines' substitution of the new pension plan for the old in 1972 because at this point she had completed the ninth grade only and was unaware that she held a pension right of any value. Accordingly, based on the present record, Malcolm acted without authority in purporting to alienate the entire pension right under the original plan because he was legally empowered to dispose of his undivided share only.
Nevertheless, Martha ratified the transaction between Delta and Malcolm by commencing and prosecuting this lawsuit. Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority. An express act of ratification must evidence the intention to be bound by the ratified obligation. Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation. La.C.C. art. 1843 (1984). In her pleadings, evidence and argument Martha expressly gave her consent to be bound by the obligations created by the transaction and her acceptance of its benefits. Delta Airlines and Malcolm did not have authority to extinguish or exchange Martha's undivided share in the old pension right; nevertheless they purported to act in her behalf by substituting a new pension plan for the entire right held jointly by the former spouses under the old plan. Accordingly, a ratification occurred when Martha gave her consent to the obligation incurred on her behalf and affecting her interest by Malcolm and Delta without authority. Moreover, if it should turn out that Malcolm had the authority under the original pension plan not of record herein to act for Martha in exchanging one pension obligation for another, the result would be the same except that the obligation would have been incurred on Martha's behalf with authority.
These conclusions are in accord with traditional civil law doctrine. The French commentators Aubry & Rau have observed:
"A coowner may not alienate the thing, or encumber it by servitude or mortgage, to the detriment of the rights of other coowners. Even his acts of management do not bind in principle his colleagues; specifically a lease agreed by one of them can not be claimed against the others.... Acts by a sole coowner, if useful to all, are ratified as a de facto agency (negotiorum gestio)." [Footnotes omitted.]
Aubry & Rau, Property, 2 Droit Civil Francais § 331, at 387-8 (7th ed. 1961, translation by La. St. Law Inst. 1966). See also A. Levasseur, Louisiana Law of Unjust Enrichment in Quasi-Contracts, Louisiana Civil Code Series, 74 (1991).
Malcolm's argument that this court's decisions in Sims v. Sims, 358 So.2d 919 (La.1978), and T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976), should be applied prospectively only is without merit and based on a misunderstanding of the law. In those cases, this court interpreted Civil Code article 2402 (1870) and other community property principles of law to provide that (1) an employee's contractual pension right is not a gratuity, but a property interest owned by him; (2) to the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage; (3) the right to share in a retirement plan is a community asset which, at the dissolution of the community, must be so classifiedeven though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future *63 and is contingent upon the happening of an event at an uncertain time. Sims v. Sims, supra, at 921-922; T.L. James & Co., Inc. v. Montgomery, supra. Consequently, the judicial decisions in those cases did not create law to be applied prospectively but interpreted principles of legislated law that antedated and governed the matrimonial regimes in those cases and similarly apply to the present case.
Malcolm relies mistakenly on United Association of Journeymen v. Myers, 645 F.2d 532 (5th Cir.1981) as precedent contrary to our holding. The case is distinguishable on its facts. In Myers the court of appeals concluded that the non-employee former spouse had no interest in her former spouse's pension plan because the plan had been created after the dissolution of the community. In the present case, Martha clearly had an interest in a pension right earned during the community under a plan created prior to the termination of the community; Myers did not present the question we have decided affirmatively in Martha's favor, i.e., whether Martha acquired an interest in the new pension plan in exchange for her share in the former pension right by novation and ratification.
In summary, we conclude that Martha has a share in the present pension right she holds in indivision with Malcolm. This share is attributable to her undivided interest in the former pension right that was exchanged for the one now existing. The judgments of the court of appeal and district court to the contrary were legally incorrect and must be reversed. Ordinarily, after the reversal, it would be the duty of this court or the court of appeal to pronounce judgment valuating and dividing the pension right. In the present case, however, the case will be remanded to the trial court because the hearing officer in the trial court proceedings failed to reach the valuation and division issues after erroneously deciding that Martha had no interest in the pension right; and the trial court's judgment was based solely upon the hearing officer's erroneous ruling and not upon the court's independent assessment of the evidence with the benefit of argument by counsel. For these reasons, the judgments below will be reversed and the case will be remanded to the trial court, which is instructed to receive evidence as to the contents of the pension plans involved and generally as to the relevant issues, to the end that the court may decide the case according to the principles set forth in La. R.S. 9:2801 and our decisions in the present case, Hare v. Hodgins, 586 So.2d 118 (La. 1991); Sims v. Sims, supra, and T.L. James & Co., Inc. v. Montgomery, supra.
REVERSED AND REMANDED TO THE TRIAL COURT.