639 So.2d 1210 (1994)
Mary Kilday GOODWYNE
v.
Alvin C. GOODWYNE.
No. 94-CA-0079.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1994.
Philip R. Riegel, Jr., New Orleans, for plaintiff/appellant.
Ford J. Dieth, Marsha B. Higbee, New Orleans, for defendant/appellant.
Before KLEES, JONES and WALTZER, JJ.
JONES, Judge.
Plaintiff, Mary Goodwyne and defendant, Alvin Goodwyne appeal portions of a judgment rendered by the trial court.

FACTS
At the trial of the matter, the parties stipulated to the following facts:
Plaintiff and defendant were married on August 22, 1959. A community of acquets and gains existed between them at the time that defendant, Alvin Goodwyne commenced employment at Louisiana Land & Exploration (LL & E) on November 7, 1966. The parties were domiciled in and resided in Louisiana at all times during defendant's employment with LL & E. Plaintiff filed for divorce on August 5, 1985 and a judgment of divorce was signed on October 17, 1985. The parties executed a voluntary community property partition on October 15, 1985 which was approved by the Court on joint motion of the parties on October 17, 1985. Defendant retired from LL & E on May 1, 1992.
*1211 A joint motion to amend and supplement the qualified domestic relations order (QDRO) was filed by the parties on May 13, 1992 and signed by the Court on that date.
At the time of his retirement, defendant had 25 years and 5 months of credited service with LL & E, of which 18 years and 9 months were during the existence of the community property regime between defendant and plaintiff. Subsequently, plaintiff learned that after the initial partitioning of the community, the defendant had received additional sums of money from a Compensatory Benefits Agreement (CBA), as well as money due from stock options. Plaintiff instituted these proceedings seeking to supplement the original orders partitioning the community property.
At the trial of the case defendant, Alvin Goodwyne testified on cross-examination to the following facts:
He presented the community property settlement of 1985 and the joint motion to amend the qualified domestic relations order to the LL & E for the purpose of facilitating receipt of employment and/or other benefits due him and plaintiff. Of the $186,000 that the amended order authorized LL & E to pay plaintiff, $30,000 was as a result of certain alimony rights. The other $156,000 was the portion strictly from the retirement plan.
During his marriage to plaintiff and in connection with his employment, he was granted certain stock options by LL & E. Those stock options were not addressed in the community property settlement. The reason they were not addressed was because at the time the settlement was done, "they were not even exercisable andmostly and not worth anything because the price of the stock at the time of the divorce was less. In other words, they were under water." In his opinion, they had no value at that time. And that is why he admittedly did not bring them into the settlement.
Defendant also admitted that in July, 1985, he had exercised a stock appreciation rights option. Although the divorce wasn't final, defendant testified that he and plaintiff had already been separated since November, 1984. He also testified concerning the exercise of the various other stock options which had been granted during the marriage.
Prior to January 9, 1986, defendant did not know about the Compensatory Benefits Agreement (CBA). However, on that date, he selected an option which pays him $4500 per month beginning May 1, 1992 with a final lump sum payment to be made in January, 1998. None of the money paid under the CBA has been given to the plaintiff. Defendant did not know the total amount of the money to be receive under the CBA.
It was defendant's understanding that the CBA did not exist when the original property settlement was entered. He would not have been entitled to the CBA if he had not taken early retirement. He discussed the matter with the plaintiff when they did the amendment of the QDRO. Counsel for LL & E indicated plaintiff was not entitled to CBA because it was not part of the qualified plan.
Kevin Mulligan, manager of benefits for LL & E testified that his understanding was that stock options were incentives for future work. Further he testified that the CBA program was at least in effect in 1982.
Plaintiff, Mary Kilday Goodwyne testified that she was a registered nurse and an attorney. Her divorce matter was the first case she handled after getting out of law school. She drafted the QDRO from forms in a book by Peter Lowe. Her husband felt they could save money by her doing it. She apparently issued subpoenas to LL & E for various information during the course of these proceedings but withdrew them, at her husband's request when he promised to give her all the information she needed.
Mark Heller was qualified as an expert in pension plans and pension plan evaluations. He testified that all of the defendant's years of services were considered in the computation of benefits provided by the CBA. He testified that it was irrelevant that defendant signed the CBA agreement several months after the dissolution of the community as this was a benefit that was earned over the entire 25 years of working life.
Defendant's witnesses uniformly agreed that the most knowledgeable person on the nature of the CBA was Mr. Petrie. However, *1212 the defendant did not list Mr. Petrie on its witness list. During the trial of the plaintiff's case, defendants offered to call Mr. Petrie, the person who actually computed all the benefits but counsel for plaintiff objected since he was not on the witness list and the trial court properly refused to allow an amendment at that late date.
George Martin of Waters, Parkerson & Co. was offered and accepted as an expert in stock option valuation. He testified that he could not say why LL & E gave the stock options but in general options are given for continued service, which he stated was in the document. He acknowledged that back in 1985 the stock options did have some value.
Mr. Lynn Pyke, an actuary, testified that he was employed with Employers' Consultants. He had been involved with work for LL & E for 12 years as of the date of trial in 1993. It was stipulated that he was an expert in the field of being an actuary and in retirement plans and interpreting and confecting documents related to retirement plans and in working with pension law.
He testified that the CBA is not a qualified plan but is an excess benefits plan. The computation used for defendant for the CBA was the high 36 months (i.e. May '89 April '92). The first time Mr. Goodwyne was eligible for the CBA was when he met the conditions for early retirement on May 1, 1989. Mr. Goodwyne did not have any benefit that would have been generated through the CBA before that time. The CBA, according to Mr. Pyke, had no value as of Dec. 31, 1985. However, on cross examination, Mr. Pyke admitted that if you took out 18 years (time he was married) Mr. Goodwyne would probably not be eligible for benefits under the CBA because he would not have enough years of service.
Following the trial of the matter, the trial court made the rule for a supplemental partition of proceeds from the exercise of stock options absolute and rendered judgment in favor of the plaintiff for forty-six thousand eight hundred seven and 38/100 dollars ($46,807.38) together with legal interest from August 16, 1990, until paid; one thousand nine hundred seventy-six and 25/100 dollars ($1,976.25) with legal interest from July 26, 1985 until paid; and eight thousand five hundred and 42/100 dollars ($8,500.42) together with legal interest from March 12, 1987, until paid. The trial court noted that this award represented an award of fifty percent of the proceeds of community stock options, less thirty-two percent reduction for state and federal taxes paid by the defendant, together with legal interest from the date of the exercise of the respective options. He further ruled that the principal award shall be tax free to plaintiff as the judgment in her favor is for net after tax amounts.
The trial court denied the plaintiff's request for a supplemental partition of the unqualified portion of the CBA agreement included in the pension plan of defendant and his former employer, LL & E. Both parties appeal the judgment of the trial court

DISCUSSION AND LAW
Plaintiff, Mary Goodwyne argues that the trial court erred in failing to order a supplemental partition to plaintiff of her community interest in benefits due to defendant under the "non-qualified" portion of his defined benefit pension plan with LL & E. The first issue to be considered on appeal is whether a portion of the benefits due to defendant pursuant to the non-qualified portion of his defined benefit pension plan with LL & E constituted an asset of the community formerly existing between the parties, thus making it subject to partition.
This is a question of first impression and turns on the characterization of the Compensatory Benefits Agreement that existed between the defendant, Alvin Goodwyne and his employer, LL & E. Defendant maintains that the trial court was correct in failing to order a supplemental partition since the evidence indicates that at the time that the community was partitioned, the CBA was not in existence and had no value. We disagree.
Mr. Mulligan, the manager of benefits for LL & E admitted that the CBA program had been in effect since 1982. The fact that Mr. Goodwyne was unaware of its existence is not relevant to the issue of whether his subsequent right to benefits under the CBA is *1213 dependent upon work performed during the existence of the community. Irrespective of whether the CBA was in existence at the time of the original partition, the evidence clearly established that without the 18 years of service during the time he was married and working for the company, Mr. Goodwyne probably would not have been eligible for benefits under the CBA because he would not have had enough years of service to qualify for the benefit. The rationale of T.L. James and Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976), Sims v. Sims, 358 So.2d 919 (La.1978), Hare v. Hodgins, 586 So.2d 118 (La.1991) and Frazier v. Harper, 600 So.2d 59 (La.1992) support a conclusion that because the amount that the defendant was entitled to receive under the CBA was computed using total years of service, the plaintiff is entitled to a proportionate share of the CBA, in addition to the amounts already received under the terms of the QDRO. The meaning of Sims, supra, and T.L. James and Co. was clarified in Frazier, supra when the court noted:
... In those cases, this court interpreted Civil Code article 2402 (1870) and other community property principles of law to provide that (1) an employee's contractual pension right is not a gratuity, but a property interest owned by him; (2) to the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage; (3) the right to share in a retirement plan is a community asset which, at the dissolution of the community, must be so classifiedeven though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time.
Frazier, id. at 62.
Accordingly, the ruling of the trial judge on the issue of entitlement to a portion of the CBA must be reversed.
Defendant, Alvin Goodwyne argues that the trial court erred in including in the group of stock options it partitioned an option not granted until after the divorce and partition, and not having value or exercised until an even later date. In essence defendant argues that the trial court erred in ordering the partitioning of the stock option granted in 1986 because the community was dissolved in August, 1985. This argument has no merit.
The testimony of Lynn Pyke and the letter from John Phillips clearly supports the trial judge's factual finding that the stock options were granted based on performance in the year prior to their granting. Thus the stock option granted to the defendant was based on worked performed during the existence of the community regime. As such the trial court correctly ruled that this group of stock options should be included in the order of partition. The fact that evidence was introduced to suggest that the option may have also been given as an incentive for future effort does not remove it from the community. See Mestayer v. Williams, 569 So.2d 1102, 1106 (La.App. 3rd Cir.1990) wherein the court recognized an incentive stock plan may be both a reward for past services to the company and also an incentive to retain the employees' services in the future. This does not result in the stock which was a reward for community services, being excluded from the community. The actual receipt date is not the determinative factor, rather the determinative factor is whether work performed during the existence of the community was taken into consideration in granting the option. Since the stock option was based partly upon work performed in 1985, the trial court's factual finding awarding Mrs. Goodwyne a portion of the proceeds of the stock option will not be disturbed.
Accordingly, the judgment of the trial court granting plaintiff, Mary Kilday Goodwyne an interest in the stock option granted in 1986 is affirmed. That portion of the judgment denying plaintiff, Mary Kilday Goodwyne's request for a supplemental partition of the CBA is reversed. The case is remanded to the trial court for computation of the amount due the plaintiff in the CBA.
*1214 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.