694 So.2d 203 (1997)
Doris P. JOHNSON
v.
Charlie Mae WETHERSPOON, et al.
No. 96-C-0744.
Supreme Court of Louisiana.
May 20, 1997.
Rehearing Denied June 30, 1997.
*204 David Alan Hamilton, Baton Rouge, for Applicant.
Marsha Mason Wade, Baton Rouge, for Respondent.
JEFFREY P. VICTORY, Associate Justice.
We granted certiorari in this case to review the court of appeal's ruling that while survivor benefits paid pursuant to La.R.S. 11:762(D) belong to the beneficiary in full ownership, the beneficiary takes such benefits with the obligation to account to a former spouse in community if receipt of said benefits violates the former spouse's community ownership rights. For reasons more fully discussed below, we affirm the court of appeal.

FACTS AND PROCEDURAL HISTORY
Doris Johnson ("plaintiff") and Albert Wetherspoon married on March 23, 1957 and lived under a community property regime. On August 28, 1958, Mr. Wetherspoon became a member of the Teacher's Retirement System of Louisiana ("TRSLA") and continued as an active member until his death. Plaintiff and Mr. Wetherspoon separated on November 12, 1966. A petition for separation was filed on November 15, 1966, and on January 6, 1967, a judgment of separation was rendered terminating the community retroactive to November 15, 1966. However, the community between plaintiff and Mr. Wetherspoon was never partitioned.
Following his divorce, Mr. Wetherspoon married Charlie Mae Clark, now Charlie Mae Wetherspoon ("defendant") on December 21, 1974. The couple remained married until Mr. Wetherspoon's death on September 13, 1984.
As Mr. Wetherspoon's widow and named beneficiary, defendant began receiving death benefits in 1984 pursuant to La.R.S. 11:762(D). The payment of these benefits continued without incident for almost ten years, until April 8, 1994, when plaintiff filed the instant suit seeking to have the court determine her interest, as a former spouse in community, in any benefits resulting from or attributable to contributions made by Mr. Wetherspoon to TRSLA during the existence of the community between herself and Mr. Wetherspoon.[1]
Both parties filed motions for summary judgment in the trial court. After denying plaintiff's motion, the trial court granted defendant's motion for summary judgment, finding that the benefits received by defendant from TRSLA were hers alone and plaintiff did not have a right to any past, present, or future benefits as they did not constitute community property. On appeal, the First Circuit Court of Appeal reversed, holding plaintiff had a community interest in TRSLA benefits because they constituted community property and remanded the case to the trial court for further proceedings. Johnson v. Wetherspoon, 95-1280 (La.App. 1st Cir. 2/23/96), 669 So.2d 589. We granted defendant's writ to review the correctness of this ruling. Johnson v. Wetherspoon, 96-0744 (La.5/10/96), 672 So.2d 669.

DISCUSSION
In 1936, the Louisiana Legislature enacted TRSLA with the stated purpose of providing retirement allowances and other benefits for teachers of the State of Louisiana. La.R.S. 11:702. According to the TRSLA plan, members *205 contribute a percentage of their salary to the system while employers of TRSLA members also contribute a percentage of their employees' salary to the system. However, TRSLA is a defined benefit system rather than a defined contribution system. As such, monthly payments that become payable under the plan are not based on the amount of contributions made by the member, but instead are calculated based upon the member's highest average compensation, years of service credit, and the member's age. In accordance with the stated purpose of TRSLA, two primary categories of benefits are provided by the TRSLA plan: retirement benefits and survivors benefits.
It is well settled in Louisiana that a former spouse is entitled to a pro rata share of the retirement benefits of a member spouse to the extent the retirement benefits were attributable to the former community. Frazier v. Harper, 600 So.2d 59 (La.1992); Sims v. Sims, 358 So.2d 919 (La.1978). The issue presented in the case sub judice, however, concerns whether survivor benefits, paid pursuant to La.R.S. 11:762(D), belong to the surviving spouse in full ownership or whether the surviving spouse must account to a former spouse in community if receipt of said benefits violates the former spouse's community ownership rights.[2]
This Court has previously held that "a spouse's right to receive an annuity, lump-sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to the spouse's employment during the community, an asset of the community." Sims v. Sims, 358 So.2d 919, 922 (La.1978); See also, Frazier v. Harper, 600 So.2d 59 (La. 1992); Hare v. Hodgins, 586 So.2d 118 (La. 1991).[3] Furthermore, in T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1975) (on rehearing), this Court determined that this right to share includes not only the employee's contributions, but also the matching contributions by the employer, as this too is a community asset acquired by community earnings and efforts.[4] Moreover, a close examination of these two decisions leads to the conclusion that this right to share applies whether the plan in question is private or public. Compare, Sims, 358 So.2d at 919 (holding that benefits payable by a federally created pension plan are community property), with T.L. James, 332 So.2d at 856 (finding that benefits payable by a private pension plan are community property). See also, Thrash v. Thrash, 387 So.2d 21 (La. *206 App. 3d Cir.1980) (stating, "In Sims and T.L. James, the Supreme Court set forth the guidelines to be followed in determining the community's interest in deferred compensation plans, be they private or public, acquired during the existence of the community"). Citing this Court's decisions in Frazier and Sims, the court of appeal determined that survivor benefits payable by the employee's retirement plan, to the extent attributable to the community, are an asset of the community.
Defendant, however, contends that the court of appeal erred in two respects. First, defendant argues the court of appeal erred in interpreting this Court's holding in Sims that "other benefits payable by a retirement plan," Sims, 358 So.2d at 922, include all survivor or death benefits. Second, defendant states the court of appeal erred in applying a rule concerning retirement benefits accrued by an employee spouse during a community regime to this case when the benefits at issue are not part of any benefits accrued by the member of the retirement plan, but arise out of and are authorized by La.R.S. 11:762(D), which provides for survivor benefits.[5]
As for defendant's first contention, we disagree. As noted above, this Court held that "A spouse's right to receive an annuity, lump sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to his employment during the community, an asset of the community." Sims, 358 So.2d at 922. Furthermore, the Sims court stated:
[O]ur courts have uniformly held that, at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit sharing or contract, if and when they become payable, with the spouse's interest to be recognized as one-half of any payments *207 to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community.
Not only did Sims decline to distinguish between retirement benefits and survivors benefits, but the Court cited with approval its earlier decision in T.L. James, where it determined that survivor benefits were community property and a former spouse in community was entitled to share in those benefits to the extent they were attributable to time and effort the former spouse spent in community with the member spouse. T.L. James, 332 So.2d at 856. Therefore, recognizing this Court's previous decisions that declined to distinguish between retirement and survivor benefits, we likewise decline to now treat the payment of retirement and survivor benefits differently. See also, Elizabeth Alford Beskin, Retirement Equity Inaction: Division of Pension Benefits Upon Divorce, 48 La.L.Rev. 677 (1988) ("The [T.L. James] Court's crucial assumption is that pension plan death benefits are similar to `retirement or profit sharing funds'"). Furthermore, as the following discussion shows, the similarity in the method used to calculate retirement and survivor benefits reinforces our conclusion that retirement and survivor benefits should be treated synonymously when determining the interest in said benefits of a former spouse in community.

Retirement Benefits
La.R.S. 11:768 sets forth the manner in which retirement benefits are calculated.[6] The actual benefit received, however, may vary depending upon the Option selected under R.S. 11:783.[7] According to La.R.S. *208 11:783, upon retirement, any member may elect to receive his retirement in one of three ways. The member can (1) choose to receive his full monthly benefit (commonly referred to as the Regular Maximum benefit) with nothing going to his survivors upon his death, (2) choose Option 1 which provides for a reduced benefit, but allows for the possibility of a lump-sum payment to the member's beneficiary(ies) upon his death, or (3) choose Option 2, 3, or 4 in which a reduced benefit is received in exchange for a benefit being provided to the member's beneficiary(ies) for the life of the beneficiary(ies).
Assuming no option had been selected, the Regular Maximum benefit a member would have been entitled to upon his retirement would be calculated by multiplying the number of years of service credit the member had by the member's highest average compensation for the 36 highest successive months by either 2 percent or 2½ percent ([# of years] × [highest average compensation for 36 successive months] × [2 or 2½ percent])[8] Under the Regular Maximum method, nothing would be payable to a beneficiary if the member died.
However, if a member were to select an Option under La.R.S. 11:783, the possibility exists that TRSLA would have to make a lump sum payment to the member's estate or designated beneficiary(ies) upon the member's death. Thus, TRSLA is at risk of having a greater liability than it would under the Regular Maximum plan. To provide for that risk, actuarial factors are used to reduce the monthly benefit below what would have been paid during the member's lifetime under the Regular Maximum plan. The reasons for the reduction is to prevent TRSLA from paying out more on a system wide basis for Members who select various Options than it would for those who select the Regular Maximum plan.
If a member selects Option 1, the total amount of his accumulated contributions as of the date of his retirement is determined and the monthly benefit he would otherwise receive (under the Regular Maximum plan) is reduced slightly in order to allow for the possibility of a lump-sum payment in the event of the member's death. Then, for each month the member draws a benefit, a predetermined amount is subtracted from the total accumulated contributions. If the member dies while a balance of accumulated contributions is still left, then that balance is paid to the member's estate or designated beneficiary(ies).
Options 2 through 4 are commonly known as joint and survivor benefits. The purpose of these benefits is to spread the payments (the Regular Maximum benefits) that ordinarily would have been paid over only one lifetime (the member's) to two (the member's and beneficiary's). Once again, to ensure that the retirement system will not be paying out any more on a system wide basis for *209 members who select a joint and survivor benefit than it would for those who select regular maximum, actuarial factors are employed. The actuarial factors to be used in a given calculation are based upon the ages of both the member and the beneficiary.
Under Option 2 (100% joint and survivor benefit), once the benefit amount is determined using the above formula (the Regular Maximum benefit reduced by an actuarial factor), that benefit amount would be paid to the member for the rest of his life, with the same benefit being paid to the beneficiary for the rest of the beneficiary's life. Under Option 3 (50% joint and survivor benefit), the benefit amount determined from the above formula would be paid to the member for the rest of his life; however, only 50% of that benefit would then be paid to the beneficiary for the rest of the beneficiary's life. The benefit under Option 4 is dependant on various other factors.[9]

Survivor Benefits
Survivor benefits are paid according to the provisions in La.R.S. 11:762. According to the statute, benefits are paid either to the surviving spouse with minor children,[10] the surviving minor children alone,[11] or the surviving spouse alone.[12] In the event no one qualifies under these provisions, the act provides for a refund of the member's accumulated contributions to either a designated beneficiary or to the member's estate.[13] As there were no minor children at the time of Mr. Wetherspoon's death, benefits were (and continue to be) paid pursuant to La.R.S. 11:762(D), which provides:
A surviving spouse without minor children shall be paid per month, for the remainder of his life, the Option 2 equivalent of the benefit amount based on years of service that the member had earned to the date of his death using the two and one-half percent benefit formula; or three hundred dollars per month, whichever is greater, provided the surviving spouse had been married to the deceased member for at least one year prior to death, and provided the deceased member was an active member at the time of death and had ten or more years of service credit, at least two of which were earned immediately prior to death or provided the deceased member had twenty or more years of service credit regardless of when earned or whether the deceased member was in active service at the time of death.
As can be seen, survivor benefits are calculated in the exact same manner as retirement benefits under Option 2, the only exception being that the 2½ percent formula is always used in the calculation of survivors benefits. Both retirement benefits and survivor benefits are calculated using the number of years of creditable service, as well as the average earnable compensation of the member. As plaintiff points out, Mr. Wetherspoon's employment during his first community contributed to the number of years of creditable service. Specifically, Mr. Wetherspoon was a member of TRSLA for over eight years while he and plaintiff were married.[14] In addition, Mr. Wetherspoon's salary during the first community was the foundation for his later salary which was used in the determination of his average earnable compensation at the time of his death. Therefore, as stated above, the similarity in which retirement and survivor benefits are calculated reinforces *210 the conclusion that these benefits should be treated in a similar manner when determining the interest in said benefits of a former spouse in community.

Legislative Intent
In addressing defendant's second contention, we must examine whether the legislature intended that the survivor benefits payable under TRSLA be paid solely to the named beneficiary, to the exclusion of any spouse in community. Defendant argues that because La.R.S. 11:762(D) directs payment of survivor benefits solely to the surviving spouse, the legislature intended to exclude any and all other claimants. Again, we disagree.
Presumably, this position arises from the specific language of La.R.S. 11:762(D), which states that "A surviving spouse without minor children shall be paid...." However, the defendant's position fails to recognize that La.R.S. 11:768, which provides for the payment of retirement benefits, contains language similar to that found in the survivor benefits statute. La.R.S. 11:768 states:
Upon service retirement, a member who retires ... shall receive an allowance....
Thus, were we to subscribe to this reasoning, one would have to agree that the legislature also intended to make "members" a statutorily defined class of persons entitled to retirement benefits, to the exclusion of all other claimants. However, as stated earlier, this interpretation is not tenable in light of this Court's holdings that a former spouse is entitled to her share of the retirement benefits payable to a plan member to the extent those benefits are attributable to time spent and contributions made by the former community. Frazier, 600 So.2d at 59; Sims, 358 So.2d at 919. Similarly, La.R.S. 11:1151(G), which provides for the return of a member's accumulated contributions in the event no benefits are otherwise payable under the TRSLA plan, states:
The accumulated contributions of a deceased member shall be paid in a lump sum to his named beneficiary or estate.
Again, adherence to defendant's reasoning would suggest that the legislature also intended to create a "statutorily defined class" consisting of either named beneficiaries or estates concerning the refund of accumulated contributions; a doubtful proposition. Thus, despite the clear similarity in phraseology used by the legislature in La.R.S. 11:762, La.R.S. 11:768, and La.R.S. 11:1151(G), the defendant would find that only in La.R.S. 11:762 did the legislature intend to create a "statutorily defined class." We disagree and subscribe to the idea that in all likelihood, the legislature did not intend to create a "statutorily defined class" in any of the above instances.[15]
Furthermore, to hold that defendant is entitled to the survivor benefits free and clear of any claim by plaintiff would be to interpret La.R.S. 11:762(D) in an entirely opposite manner than other statutes on the same subject matter. "Laws on the same subject matter must be interpreted in reference to each other." La.C.C. art. 13. Had Mr. Wetherspoon retired while still married to the defendant (rather than dying), plaintiff would have unquestionably been entitled to share in the retirement benefits attributable to the time spent in the first community between herself and Mr. Wetherspoon. Frazier, 600 So.2d at 59; Sims, 358 So.2d at 919. Equally true is the fact that had Mr. Wetherspoon retired without having remarried, plaintiff would have been entitled to recover her share of the retirement benefits. Frazier, 600 So.2d 59; Sims, 358 So.2d at 919. Finally, La.R.S. 11:762(F) states that:

*211 The accumulated contributions of a deceased member shall be paid in a lump sum refund to the natural person or persons he has designated as his beneficiary or to his estate only if no benefits under Subsection A, B, C, D, H, or I of this Section are payable.
Again, plaintiff would have been entitled to claim her share of the refunded contributions attributable to the time spent in community with the decedent whether they were payable to the decedent's estate or another beneficiary. Therefore, were we to accept the approach urged by defendant, the only instance in which plaintiff would not be entitled to a share of the benefits (or contributions in the case of La.R.S. 11:762(F)) is when her ex-spouse dies and had previously remarried, as in this case.
La.Civ.Code art. 9 provides that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law should be applied as written and no further interpretation may be made in search of the intent of the legislature. It has been argued that because La.R.S. 11:768 provides a survivor benefit only to the surviving spouse, the law is clear and should be applied as written. However, as shown by the following hypothetical, application of Louisiana Revised Statutes 11:762(D), in accordance with defendant's position, does lead to absurd consequences. Assume that a member of TRSLA has been married to his first spouse for twenty years. During those twenty years, the member contributed a portion of his salary to the TRSLA plan. In the twenty-first year, the member and his spouse divorce, however, their community is never partitioned. Immediately after the divorce is final, the TRSLA member remarries. Two years after marrying his second spouse, the TRSLA member dies. As defendant would have us construe the provisions of La.R.S. 11:762(D), the member's second spouse would be entitled to the entire survivor benefit with the first spouse receiving nothing. Absent clear language to the contrary, we are compelled to conclude that the Legislature did not intend such an anomalous result.[16]

CONCLUSION
It is the duty of courts to interpret laws on the same subject matter in reference to each other. La.Civ.Code art. 13. Thus, we adopt a construction of TRSLA that harmonizes and reconciles it not only with other statutes dealing with the same subject matter, but also with general community property laws. As stated above, applying community property principles to survivor benefits, as they are already applied to retirement benefits, accomplishes this goal. Therefore, unless specifically provided for otherwise by the legislature, any benefit payable by a retirement plan, to the extent attributable to the community, is an asset of the community. Applying this rule to the present facts, we conclude that the legislature did not intend to exempt survivor benefits payable by TRSLA from the claims of a former spouse in community. The court of appeal correctly overruled the defendant's motion for summary *212 judgment and remanded the case to the trial court for further proceedings.

DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed.
AFFIRMED.
LEMMON, J.,-not on panel. Rule IV, Part 2, §3. The panel consisted of Chief Justice CALOGERO and Asssociate Justices MARCUS, WATSON, KIMBALL, JOHNSON, VICTORY and BLEICH.
CALOGERO, C.J., dissents and assigns reasons.
WATSON, J., dissents for reasons assigned by CALOGERO. C.J.
CALOGERO, Chief Justice, dissenting.
The majority concludes that a former spouse has a claim against the surviving spouse for a portion of the survivors benefits "to the extent" that the benefits are "attributable to the [former] community." I disagree. LSA-RS 11:762 provides survivors benefits only to members of a statutorily defined class. With certain other limiting qualifications, this statutory classloosely summarizedincludes: (1) a surviving spouse with a minor child or children, (2) surviving minor children alone, or (3) a surviving spouse alone, provided that the surviving spouse had been married to the deceased member for at least one year prior to death. See LA.REV.STAT.ANN. § 11:762(B)-(D) (West 1993). Under LSA-RS 11:701, "spouse" is defined as follows:
"Spouse" shall mean a person who is legally married to a member of this system and shall not include a person who is legally separated from a member of this system by a judgement of separation, unless such person has voluntarily reconciled with the member and which reconciliation is established by a court of competent jurisdiction.
LA.REV.STAT.ANN. § 11:701(24) (West Supp. 1997)(emphasis added). In defining "spouse," the legislature clearly intended to exclude legally separated spouses and, most assuredly, former spouses. Accordingly, neither a legally separated spouse nor a former (divorced) spouse, who under no stretch qualifies as "legally married to a member of this system," is statutorily entitled to survivors benefits.[1]
Only members of the statutory class are entitled to receive survivors benefits,[2] as calculated according to the formulas in subsections B through D of LSA-RS 11:762. In the event that no members of the statutory class survive the deceased TRSLA member, then the accumulated contributions of the deceased member devolve to either a designated beneficiary or to the deceased's estate. LA.REV.STAT.ANN. § 11:762(F) (West Supp. 1997). Under LSA-RS 11:701, "accumulated contributions" are defined as follows:
"Accumulated Contributions" means the sum of all the amounts deducted from the compensation of a member plus any interest which has been credited to his individual account in the annuity savings fund plus amounts credited to his account.
LA.REV.STAT. ANN. § 11:701(1) (West 1993).[3]
In the instant case, there were no minor children. Thus, had Mr. Wetherspoon not *213 remarried, there would be no survivors benefits for the plaintiff to lay claim to, as a former spouse is not a member of the statutory class who is entitled to receive survivors benefits, and the former spouse would be relegated to a claim against the accumulated contributions. Nonetheless, the majority concludes that when, as in the instant case, a surviving spouse does exist, then the former spouse is entitled to share in the survivors benefits due to the surviving spouse. In my view, a former spouse's claim against TRSLA survivors benefits should always be limited to the portion of accumulated contributions of the deceased member that are attributable to the former community. This result would simply place the former spouse in the same position that he or she would have been in had the employee not remarried or not been survived by minor children. In addition, this result would further the legislative purpose behind the statutory survivors benefits: to aid the surviving widow and minor children of the employee. This purpose would be furthered by shielding the survivors benefits, which would not exist in the absence of a surviving spouse or minor children, from the claims of a former spouse.
To clarify my view, I note that had retirement benefits, as opposed to survivors benefits, been at issue in the instant case, the former spouse would clearly have been entitled to a pro rata share of those benefits to the extent that they were attributable to the former community. Frazier v. Harper, 600 So.2d 59 (La.1992); Sims v. Sims, 358 So.2d 919 (La.1978); T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1975).[4] This is so because, upon retirement, the retired employee has an unqualified right to receive those benefits until his death. See LA.REV. STAT. ANN. § 11:784 (West 1993 & Supp. 1997).
In contrast, survivors benefits are payable only to the surviving spouse and/or minor children and, then, only under certain limiting conditions. For example, survivors benefits that are payable to a surviving spouse alonein the absence of minor children cease upon the remarriage of the surviving spouse and resume upon the termination of the remarriage.[5] Also, survivors benefits that are payable to a decedent's minor child generally cease upon the child's attainment of the age of eighteen years or upon the child's marriage.[6] LA.REV.STAT. ANN. § 11:762(D)(2) (West 1993). Thus, survivors benefits are distinguishable from retirement benefits in that the prospective entitlement to survivors benefits ceases, in many circumstances, prior the recipient's death, upon the happening of certain events. Thus, survivors benefits are different and, therefore, should be treated differently from retirement benefits.
Of course, there remains the unresolved question of whether a former spouse's claim for a portion of the accumulated contributions should be made against the recipient of the survivors benefits, the deceased's estate, or even the TRSLA plan itself. Where retirement benefits are at issue, this Court has concluded that the former spouse's claim is against the recipient (usually the employee), who must account to the former spouse for his or her share of the benefits as they are received. This is so because the former spouse, as a co-owner of the retirement benefits, *214 is entitled to a pro rata share of each benefit payment made to the recipient, in perpetuity. See Frazier, supra; Sims, supra.
However, where, as in the instant case, survivors benefits are at issue, it would not be appropriate for the former spouse's claim for a portion of the accumulated contributions to lie against the recipient(s) of the survivors benefits. Although the former spouse's claim against the accumulated contributions can be reduced to a fixed sum, the ultimate value of the survivors benefits to the recipients cannot be so reduced, as those benefits are dependent upon the variable conditions set forth in LSA-RS 11:762(B)-(D). LA.REV.STAT. ANN. § 11:762(B)-(D) (West 1993). Therefore, in one instance, the actual amount of survivors benefits that are paid out might greatly exceed the fixed amount of the accumulated contributions that the former spouse is due, whereas in another instance the amount of the survivors benefits paid out might fall short of the fixed amount due to the former spouse. Thus, it would be impossible to determine an accurate "pro rata" share of the survivors benefits that the former spouse could lay claim toeither from the recipients of the survivors benefits or from TRSLAto satisfy his or her fixed portion of the accumulated contributions. Moreover, it would defeat the purpose of the survivors benefits to require the recipients to pay up front the portion of the accumulated contributions due to the former spouse as a condition of receiving the survivors benefits.
Further, for the reasons set forth below, it would be equally inappropriate for the former spouse's claim for a portion of the accumulated contributions to lie against TRSLA. This is so primarily because if such a claim were permitted against TRSLA, the liability of the plan would be extended beyond that which it was designed to bear, as these type of plans are specifically designed to be actuarially sound. Thus, any changes to the application of the plan's provisions could impair this actuarial soundness. For example, if the plan were required to pay the former spouse one-half of the accumulated contributions "that were attributable to the former community," while at the same time, were required to pay the statutory survivors benefits to the qualified recipients, the plan would clearly bear a greater financial burden than the law contemplates that it should. The only other alternative would be for TRSLA to reduce the amount of the survivors benefits to compensate for the loss of the accumulated contributions, but this solution, as noted above, would defeat the purpose of the survivors benefitsto provide a maximum benefit to the statutory survivors of the deceased plan member. In my view, the proper resolutionand one that is consistent with the requirements of LSA-RS 11:762would be to have the former spouse proceed against the deceased's estate for the value of the portion of the accumulated contributions due. The nature of the obligation bears a similarity to a reimbursement claim. Thus, I would apply Civil Code article 2358.1 by analogy. Under article 2358.1, the source of reimbursement is the patrimony of the spouse who owes reimbursementin this case, the deceased's estate. LA. CIV.CODE ANN. art. 2358.1 (West Supp.1997).
In summary, I conclude that the fruition of any expectations that the plaintiff may have had with regard to her participation in the decedent's TRSLA plan must necessarily be limited by the parameters of the plan and the statutes that create it. Under the TRSLA plan, plaintiffa former spouseis clearly not entitled to receive any portion of the survivors benefits. However, fairness dictates that plaintiff not be deprived of her portion of the accumulated contributions that are attributable to the former community. Therefore, just as we improvised in the area of retirement benefits, so to, I would permit plaintiff to recover the value of her portion of the accumulated contributions from the decedent's estate. Thus, I would not give the former spouse any part of the survivors benefits, and to the extent that the former spouse might have a claim for a portion of the accumulated contributions, I would relegate that claim to one against the decedent's estate.
Accordingly, for the reasons given above, I dissent from the majority.
NOTES
[1] Also named as defendants were Vanetia Karyl Wetherspoon Jones and Wendell Albert Wetherspoon, the two children born out of the marriage of Doris Johnson and Albert Wetherspoon. TRSLA was not made a defendant nor was it ever served. However, plaintiff prayed for judgment ordering TRSLA to pay her that portion of the benefits currently being paid to Charlie Mae Wetherspoon that are attributable to contributions made by Albert Wetherspoon during the existence of the first community.
[2] The court of appeal's holding states that the beneficiary takes the benefits with the obligation to account to any complaining spouse in community or forced heir if receipt of said benefits violates either the spouse's community ownership rights or the forced heir's legitime. As this opinion deals only with the rights of any spouse in community with a plan member, we do not reach the question of a forced heirs rights to the proceeds payable under a deferred compensation plan. However, see C.C. art. 1505(D) and Lee Hargrave, Community Property Interests in Individual Retirement Accounts, 55 La. L.Rev. 509 (1995)(suggesting that forced heirs have no claim over pension, profit-sharing, or IRA proceeds).
[3] But see, Blalock v. Blalock, 259 So.2d 367 (La.App. 2d Cir.1972); Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir.1968); Moore v. Moore, 187 So.2d 145 (La.App. 2d Cir.1966); and Scott v. Scott, 179 So.2d 656 (La.App. 2d Cir.1965), all holding that benefits payable under the Teacher's Retirement System of Louisiana are the separate property of the member. To the extent these cases conflict with the instant case, they are overruled.
[4] As this Court stated in T.L. James:

Only the employer contributes to the plans, but the contribution is not without reciprocal contribution on the part of the employee, although these are intangible and difficult to evaluate. It is a reward by the company to promote loyal and efficient service on the part of the employee. The plans are, moreover, an inducement to employees to remain in the service of the company to enjoy the benefits the plan promised. In short, the contribution of the employer is not a purely gratuitous act, but it is in the nature of additional remuneration to the employee who meets the conditions of the plan. The employer expects and receives something in return for his contribution, while the employee, in complying, earns the reward. The benefits to the employee are, therefore, earned incomeproperty within legal contemplation.
The dissent's position that the former spouse's claim against TRSLA survivor benefits should be limited to the portion of accumulated contributions of the deceased member that are attributable to the former community ignores this proposition. The dissent's position is especially unpalatable in light of the fact that the benefit paid by TRSLA (because it is a defined benefit system rather than a defined contribution system) is not dependent on the amount of contributions made by the member spouse.
[5] In support of its position, defendant cites the First Circuit Court of Appeal's decision in Bonfanti v. Percy, 95-1189, (La.App. 1st Cir. 4/6/96); 672 So.2d 415. While recognizing this Court's holding in Sims that a spouse's right to receive an annuity, lump sum benefit, or other benefit payable by a retirement plan is, to the extent attributable to the spouse's employment during the community, an asset of the community, the court of appeal set out to determine if payment of survivor benefits under the State Employees Retirement System was analogous to payment of retirement benefits under the same plan. The court of appeal determined that "the state statutes governing Mr. Bonfanti's retirement plan do not consider survivor's benefits and retirement benefits to be synonymous." Bonfanti, 672 So.2d at 418. In so ruling, the court of appeal stated the following as justification for the distinction between survivor and retirement benefits under the State Employee's Retirement System:

According to LSA-R.S. 11:475, the surviving spouse shall receive a monthly allowance equal to fifty percent of the deceased member's average monthly compensation or two hundred dollars per month, whichever is greater. However, two conditions must be met in order for the surviving spouse to receive these survivor benefits.
Under this provision, the two conditions that must be met are: 1) the surviving spouse must have been married to the deceased member for at least two years prior to the death of the member; 2) the surviving spouse is entitled to these benefits if the deceased member either had at least ten years of creditable service at least two years of which were earned immediately prior to his death, and at the time of death, the deceased member was in state service, or the deceased member had twenty years or more of service credit regardless of when earned and whether the deceased member was in state service at the time of death.
In contrast, retirement benefits are payable to the member who is eligible for retirement based upon his years of creditable service and an attained age set forth in LSA-R.S. 11:441. (footnote omitted). Additionally, the member must also file an application for retirement. LSA-R.S. 11:442. (footnote omitted). According to LSA-R.S. 11:442 B, the retirement benefits do not become effective until the application for retirement is filed in the office of the board or the day after the member terminates from state service, whichever is later. Clearly, under the state provisions, retirement benefits and survivor benefits are not one in the same.
Like the State Employees Retirement System at issue in Bonfanti, TRSLA has similar provisions. However, we disagree that different qualifying requirements warrant separate treatment of survivor and retirement benefits under TRSLA. Rather, as discussed infra, the fact that both retirement and survivor benefits are payable according to the same formula under TRSLA when there is a surviving spouse and no minor child or children suggests that these benefits be treated the same. Finally, we recognize that a survivor benefit payable under La. R.S. 11:762(B) and (C) present different and more complex problems than those at issue in the present case and express no opinion as to how such benefits should be apportioned.
[6] Retirement Allowances

Upon service retirement, a member who retires on or after April 1st, 1970, shall receive an allowance which, with the exception of the minimum benefits hereinafter provided for, shall consist of:
(1) An annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement; and
(2)(a) An annual pension which, together with an annuity, provides a total allowance equal to two percent of his average earnable compensation, as determined under R.S. 11:231, multiplied by the number of years of creditable service, including unused accumulated sick leave credit which is determined by the board of trustees, plus the sum of three hundred dollars. The referenced additional sum of three hundred dollars shall only be applicable with respect to persons becoming members prior to July 1, 1986. In computing the pension, only compensation and years of service experienced prior to July first following the date on which the member attained the age of sixty-five or, as provided in R.S. 11:767, sixty-eight, shall be taken into account: or,
(b) Notwithstanding the provisions of Subparagraph (a) of the Paragraph, any member who retires on or after June 1, 1975 and who has attained the age of sixty-five years and has credit for at least twenty years of creditable service, exclusive of military service, unused accumulated sick leave and unused accumulated annual leave, or any of these, or who has attained the age of fifty-five years and has credit for at least twenty-five years of creditable service, exclusive of unused accumulated sick leave and unused accumulated annual leave, or who has credit for at least thirty years of creditable service at any age, exclusive of unused accumulated sick leave and unused accumulated annual leave, an annual pension which, together with the annuity, provides a total allowance equal to two and one-half percent of his average earnable compensation, as determined under R.S. 11:231, multiplied by the number of years of creditable service, including unused accumulated sick leave credit which is determined by the board of trustees, plus a sum of three hundred dollars. The referenced additional sum of three hundred dollars shall only be applicable with respect to persons becoming members prior to July 1, 1986. In computing the pension, only compensation and years of service experienced prior to July first following the date on which the member attained the age of sixty-five or, as provided in R.S. 11:767, sixty-eight, shall be taken into account.
[7] La. R.S. 11:783, which provides for the selection of an option for the method of payment after the death of a member of the TRSLA provides, in pertinent part:

A. With the provision that no optional selection shall be effective in case a retiree dies within thirty days after retirement, and that such a retiree shall be considered as an active member at the time of death, until the first payment on account of any benefit becomes normally due, any member may elect to receive his benefit in a retirement allowance payable throughout life, or he may elect to receive the actuarial equivalent at that time of his retirement allowance in a reduced retirement allowance payable throughout life with the provision that:
OPTION 1. If he dies before he had received in annuity payments the present value of his annuity as it was at the time of his retirement, the balance shall be paid to his legal representatives or to any person he shall designate in a written instrument acknowledged and filed with the board of trustees.
OPTION 2. Upon his death, his reduced retirement allowance shall be continued throughout the life of and paid to any person he shall designate in a written instrument acknowledged and filed with the board of trustees at the time of his retirement.
OPTION 3. Upon his death, one-half of his reduced retirement allowance shall be continued throughout the life of and paid to any person he shall designate in a written instrument acknowledged and filed with the board of trustees at the time of his retirement.
OPTION 4. Upon his death, some other benefit designated by him at the time of his retirement shall be paid throughout the life of and to any person he shall designate in a written instrument acknowledged and filed with the board of trustees at the time of his retirement, provided, such other benefit, together with the reduced retirement allowance, shall be certified by the actuary to be of equivalent actuarial value to his retirement allowance, and approved by the board of trustees.
[8] To retire under the 2% percent average compensation factor, the member must be:

Age 60 with at least 10 years of service credit, excluding military service purchased under the provisions of La. R.S. 11:153 after Sept. 10, 1982; or
Any age with 20 years of service credit, excluding military service purchased under the provisions of La. R.S. 11:153 after Sept. 10, 1982.
To retire under the 2½% average compensation factor, the member must be:
Age 65 with 20 years of service credit, excluding any military service;
Age 55 with 25 years of service credit; or
Any age with 30 years of service credit.
[9] In order to calculate the benefit payable under Option 4, the ages of both the member and the beneficiary are needed, as well as the specific dollar amount the member wants the beneficiary to receive monthly in the event the member predeceases the beneficiary.
[10] La. R.S. 11:762(B)
[11] La. R.S. 11:762(C)
[12] La. R.S. 11:762(D)
[13] La. R.S. 11:762(F) provides:

The accumulated contributions of a deceased member shall be paid in a lump sum refund to the natural person or persons he has designated as his beneficiary or to his estate only if no benefits under Subsection A, B, C, D, H, or I of this Section are payable.
[14] Mr. Wetherspoon and plaintiff were married on March 23, 1957. Shortly thereafter, Mr. Wetherspoon became a member of TRSLA on August 28, 1958 and remained so upon he and plaintiff's divorce on November 15, 1966. Thus, Mr. Wetherspoon was a member of TRSLA for roughly eight years, two and one half months while married to plaintiff.
[15] It has also been suggested that had Mr. Wetherspoon not remarried, there would be no survivor benefits available for the former spouse to lay claim to and the former spouse would be relegated to a claim against the accumulated contributions per La. R.S. 11:1151(G). This position would thus deny the former spouse the "benefit" of the member spouse remarrying. However, what this position fails to recognize is that had Mr. Wetherspoon gone on to retire, the former spouse would be allowed to reap the "benefit" of Mr. Wetherspoon's retirement. Therefore, while the former spouse would be accorded the "benefit" of the member spouse later retiring, the former spouse would not reap the "benefit" of the member spouse having remarried. I fail to see the logic in limiting the former spouses claim in one instance, but not the other, when both consequences are highly speculative and subject to numerous extraneous forces and circumstances.
[16] Another helpful guide in ascertaining the intent and meaning of a statute is to look to similar areas of the law. In numerous instances, parties have attempted to analogize the payment of benefits by a retirement plan to the payment of benefits by an insurance contract, an analogy that was rejected in T.L. James. However, what is evident from the legislature's treatment of life insurance is that it is cognizant of the method by which proceeds payable by a life insurance contract can be made exempt from the claims of forced heirs and spouses in community. Louisiana Revised Statutes 22:647, which accomplishes this result, states:

The lawful beneficiary, assignee, or payee, including the insured's estate, of a life insurance policy or endowment policy, heretofore or hereafter effected shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the policy or the estate of either, and against the heirs and legatees of either such person, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use. For purposes of this Subsection, the proceeds and avails of the policy include the cash surrender value of the policy.
Had the legislature intended such a result in conjunction with the payment of survivor benefits under the TRSLA, it is clear that the legislature was aware of how to accomplish such a result.
[1] Furthermore, where no minor children exist, survivors benefits are payable to a surviving spouse only when the TRSLA member has earned a minimum of ten years of service credit. LA.REV.STAT. ANN. § 11:762(D)(1) (West 1993). In the instant case, at the point in time at which the former community was terminated, Mr. Wetherspoon had only earned eight years of service credit. Thus, even if Mr. Wetherspoon had died before the former community was terminated, the plaintiff still would not have been entitled to survivors benefits. Rather, plaintiff would have been limited to a claim against the accumulated contributions.
[2] As noted by the First Circuit in a similar case, "[f]ederal statutes and regulations do not provide for the divisibility of a `survivor's annuity' for the simple reason that a deceased employee can have but one `surviving wife' or `surviving husband.'" Bonfanti v. Percy, 95-1189, p. 5 (La.App. 1st Cir. 4/6/96), 672 So.2d 415, 418 (quoting In the Matter of Succession of Sims, 464 So.2d 991, 998 (La.App. 1st Cir.1985)).
[3] Apparently, the "annuity savings fund" is nothing more than a holding place for employee and employer contributions to TRSLA prior to their distribution as retirement benefits, as survivors benefits, or as a return of accumulated contributions. LA.REV.STAT. ANN. § 11:873 (West 1993).
[4] I disagree with the majority's reliance on T.L. James as support for the proposition that a former spouse is entitled to a portion of the statutory survivors benefits. First, I note that the majority likens the T.L. James case, which concerned death benefits from a private pension plan that could be paid to any designated beneficiary, to the instant case, which concerns statutory survivors benefits that are payable only to members of a statutorily defined class. Further, in T.L. James, the death benefits were reduced to a fixed amount, unlike the TRSLA survivors benefits at issue, which cannot be so reduced, as they may terminate and resume upon various triggering conditions.
[5] If, however, the employee was eligible to retire at the time of his death, then the benefits would not cease. LA.REV.STAT. ANN. § 11:762(D)(2) (West 1993).
[6] Benefits would continue, however, for a child to age twenty-three provided that he is a fulltime student, and benefits would continue for a child who is mentally retarded or totally and permanently disabled if he was totally dependent upon the deceased TRSLA member and/or his spouse and if the child is not receiving assistance from other state agencies in excess of fifty percent of the benefit payable to the child. LA.REV.STAT. ANN. § 11:762(C) (West 1993).