996 So.2d 1036 (2008)
LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM (LASERS)
v.
Jane McWILLIAMS, Joelle McWilliams, and Dianne (McWilliams) Sanders.
Nos. 2006-C-2191, 2006-C-2204.
Supreme Court of Louisiana.
December 2, 2008.
*1037 Hogan & Hogan, Lila Tritico Hogan, Hammond, for applicant in (2006-C-2191).
Jonathan Ralph Schmidt, Hammond, Roland Stephen Stark, Baton Rouge, Joelle McWilliams, in proper person for respondent in (2006-C-2191).
John L. Stone, III, Council for amicus curiae, Teachers' Retirement System of Louisiana.
Kenneth Rigby, Council for amicus curiae, Kenneth Rigby.
Katherine Shaw Spaht, council for amicus curiae, Katherine Shaw Spaht.
Cynthia Ann Samuel, council for amicus curiae, Cynthia A. Samuel.
Dian Tooley-Knoblett, council for amicus curiae, Dian Tooley-Knoblett.
Beau P. Sagona, council for amicus curiae, Beau P. Sagona.
Roland Stephen Stark, Baton Rouge, for applicant in (2006-C-2204).
Jonathan Ralph Schmidt, Hammond, Hogan & Hogan, Lila Tritico Hogan, Hammond, Joelle McWilliams, in proper person, for respondent in (2006-C-2204).
ON REHEARING
VICTORY, J.
We granted a rehearing application in this concursus proceeding to reconsider our opinion on original hearing overruling Johnson v. Wetherspoon, 96-0744 (La.5/20/97), 694 So.2d 203, and holding that a former spouse is not entitled to her community property interest in survivor benefits payable by a retirement plan owned by the former community. After considering the record and the applicable law, we now hold that the former spouse is entitled to her share of the survivor benefits payable under the retirement plan and that the retirement plan should have been ordered to pay these benefits directly to her as directed by judgments dated December 15, 1989 and August 24, 1998, which partitioned the former community. Accordingly, we vacate our decision on original hearing in its entirety, reverse the decision of the court of appeal, and remand this case to the trial court.

FACTS AND PROCEDURAL HISTORY
On April 26, 1969, Joel McWilliams and Dianne McWilliams were married in Louisiana. On January 10, 1972, Joel began working as an engineer for the State of Louisiana, Department of Transportation and Development, and became enrolled in the Louisiana State Employees Retirement System ("LASERS"). Joel and Dianne had two children, Jodee, born August 24, 1973, and Joelle, born November 10, 1981. After 18 years of marriage, the community property regime between Joel and Dianne terminated on June 15, 1987, and they were divorced on October 12, 1987. On December 15, 1989, a judgment was signed by the 21st Judicial District Court, Parish of Tangipahoa, which stated in pertinent part, as follows:

*1038 Dianne McWilliams' interest in Joel McWilliams' Louisiana State Employee Retirement System plan is hereby recognized and shall be calculated as follows when and if he retires, terminates employment, or dies: (emphasis added)
 Portion of retirement/pension
 attributable to creditable service
 during existence of community X 50% X annuity (or
 Pension/retirement attributable lump sum
 to total creditable service payment)
Dianne McWilliams' portion shall be paid directly to her from the retirement agency.
On August 24, 1998, the judgment was amended by the 21st Judicial District Court to specify the numerator for the above formula as follows:
Dianne McWilliams' interest in Joel McWilliams' Louisiana State Employee Retirement System plan is hereby recognized and shall be calculated as follows when and if he retires, terminates employment, or dies: (emphasis added)
 Portion of retirement/pension
 attributable to creditable service
 from 04/26/69-06/15/87
 (217 months, 20 days)[1] X 50% X annuity or = Dianne
 Pension/retirement attributable lump sum McWilliams'
 to total creditable service payment portion
 (undetermined)
Dianne McWilliams' portion shall be paid directly to her from the retirement agency.
The judgments also recognized Dianne's interest in Joel's U.S. Army Reserve Retirement Plan and Joel's interest in Dianne's Diocese of Baton Rouge Retirement System Plan. Further, Dianne was ordered to make an equalizing payment of $2,263.50.
On May 15, 1993, Joel married Jane McMahon and after approximately 10 years of marriage, Joel died on May 24, 2003 while still employed by the State of Louisiana. Following Joel's death, three individuals filed applications for survivor benefits with LASERS:[2] (1) Jane (also naming Joelle as a child of the deceased member and a full time student at Southeastern Louisiana University[3]); (2) Joelle; and (3) Dianne (also naming Joelle as a child of the deceased). Believing Dianne was entitled to her share of survivor benefits, both by virtue of the community property judgments and the jurisprudence recognizing a former spouse's rights to such assets,[4] LASERS invoked a concursus *1039 proceeding pursuant to La. C.C.P. art. 4651 to determine who was entitled to the benefits. At the hearing, the parties stipulated that Dianne's interest in the retirement plan would be 24.60 %, that the monthly payments would be $1,144.92 per month, and that the community contributions during the community years to the LASERS plan totaled $25,963.62. Using these stipulations, LASERS either retained the disputed portion of the benefits, $1,144.92 per month, or placed the disputed portion in the registry of the court[5] as required by La. C.C.P. art. 4658 in order to be relieved of liability, and then began distributing the remainder of the survivor benefits to Jane and Joelle in accordance with the percentages set forth in the LASERS Member Handbook[6] and La. R.S. 11:471.[7]
*1040 The district court found that "the funds to be deposited to the registry of this Court by LASERS are survivor benefits rather than retirement benefits," and that the formula set forth in Sims v. Sims, 358 So.2d 919 (La.1978) did not apply to survivor benefits.[8] Instead, the district court held that survivor benefits were governed solely by La. R.S. 11:471 pursuant to which only Jane and Joelle were entitled to the benefits.
Dianne appealed this judgment, arguing that the trial court erred in distinguishing survivor benefits from retirement benefits, and in refusing to give effect to the judgments of the 21st Judicial District Court recognizing Dianne's interest in the LASERS plan when Joel died. In the alternative, Dianne asserted that the trial court erred in refusing to award Dianne one-half of the community contributions made during her marriage to Joel. The court of appeal found that because La. R.S. 11:471, setting forth the provisions relating to the distribution of survivor benefits under LASERS, did not list the former spouse among the categories of individuals entitled to receive survivor benefits, Dianne was precluded from receiving her share of the survivor benefits. Louisiana State Employees' Retirement Systems (Lasers) v. McWilliams, 05-0938 (La.App. 1 *1041 Cir.6/9/06), 938 So.2d 782. The court of appeal also relied on its prior decision in Bonfanti v. Percy, 95-1189 (La.App. 1 Cir. 4/6/96), 672 So.2d 415, to find that the intent behind survivor benefits is to ensure that family members are not left destitute upon the death of a member. Id. at 785. However, in apparent attempt to fashion an equitable remedy, the court found that Dianne was entitled to recoup from LASERS an amount of money equal to 50% of the amount stipulated by the parties to be the total amount of accumulated contributions attributable to the community, $25,963.62. Id. at 786. Thus, the court of appeal ordered LASERS to pay the lump-sum refund of 50% of that amount, $12,981.81, to Dianne's widower and representative of her estate, Richard Sanders.[9]Id. We granted writ applications filed by LASERS and Mr. Sanders. Louisiana State Employees' Retirement Systems (Lasers) v. McWilliams, 06-2191, 06-2204 (La.2/2/07), 948 So.2d 183.

DISCUSSION
LASERS is a comprehensive qualified defined benefit pension and retirement plan under Section 401(a) of the Internal Revenue code, and its provisions and regulations are outlined in La. R.S. 11:401, et seq. The statute provides that each person who becomes an employee in the state service, except those specifically excluded, shall become a member of the system as a condition of employment. La. R.S. 11:411(1). Under LASERS, any member hired on or before June 30, 2006, shall be eligible for retirement if he has thirty years or more of service at any age, twenty-five years or more of service at age fifty-five or thereafter, or ten years or more of service at age sixty or thereafter. La. R.S. 11:441(A)(1)(a)-(c).[10]
LASERS retirement benefits are computed as follows: "[a] member who retires effective on or after July 1, 1973, shall receive a maximum retirement allowance equal to two and one-half percent of average compensation, as determined under R.S. 11:231,[11] for every year of creditable service, plus three hundred dollars." La. R.S. 11:444(A). The member will receive this retirement benefit throughout his lifetime, unless he elects some other option pursuant to La. R.S. 11:446, whereby he receives a reduced retirement benefit and benefits are paid to another person he nominates upon his death. A former spouse of a LASERS member may be the person "nominated" to receive this "survivor annuity" following the member's death. La. R.S. 11:446. LASERS also provides for optional enrollment in a Deferred Retirement Option Plan, in lieu of terminating *1042 employment and accepting a retirement allowance. La. R.S. 11:447-451.4.
If a member dies before he retires, no retirement benefits are payable under La. R.S. 11:441-454. Instead, LASERS sets forth a provision for the distribution of survivor benefits which are payable when a member dies before he retires, and directs LASERS to pay a certain amount of money to the member's surviving spouse,[12] and any surviving minor children or surviving handicapped or mentally disabled children, which become payable upon application therefor and become effective as of the day following the death of the member. La. R.S. 11:471; see supra note 6, pages 1039. La. R.S. 11:471(D) provides the amounts to be paid by LASERS to these beneficiaries is dependent on whether there is a surviving spouse and/or surviving minor or handicapped or mentally disabled children. If no survivor benefits are payable, LASERS must pay to the estate or named beneficiary, which can be a former spouse, a lump-sum refund of accumulated contributions. La. R.S. 11:476. Further, if total monthly benefits paid are not equal to the accumulated contributions of the member, LASERS must pay a lump-sum refund equal to the difference between the two to the beneficiaries or the estate of the beneficiary. La. R.S. 11:475.
The issue presented in this case is whether the exclusion of the "former spouse" from the list of persons to whom survivor benefits are to be distributed under La. R.S. 11:471 operates to deprive a former spouse of her community property interest in these benefits which have been previously recognized by this Court as community property and which have been awarded to her in a valid community property judgment. For the reasons that follow, we hold that La. R.S. 11:471 does not operate to deprive her of her community property rights to these benefits.
"Since colonial days, Louisiana has been a community property state, whose basic policy has always been that the spouses share equally the acquets and gains of either spouse during marriage." Kenneth Rigby, Matrimonial Regimes: Recent Developments, 59 La. L.Rev. 465, 467 (Winter, 1999). This Court has consistently and faithfully adhered to this cardinal community property principle:
There is nothing more fundamental in our law than the rule of property which declares that this community is a partnership in which the husband and wife own equal shares, their title thereto vesting at the very instant such property is acquired. (Citations omitted).
We have repeatedly adhered to the doctrine that the half ownership of the wife in the community effects, its status not resting upon the mere gratuity of the husband, is entitled to a dignity equal to that of the husband's; and upon its dissolution and liquidation the wife is entitled to secure the delivery of this one-half right and ownership into her *1043 own exclusive management and control; and the courts have no discretion or power whatever to award her less.
Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, 173 (1956).
Our basic policy is reflected in Louisiana Civil Code Article 2338, which defines and classifies community property as follows:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.[13]
Accordingly, a long line of cases dating back to 1975 has held that, pursuant to La. C.C. art. 2338, the right to share in a retirement plan is a community asset, co-owned by the spouses, and subject to division upon dissolution of the marriage. T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975); Sims, supra; Frazier v. Harper, 600 So.2d 59, 62-63 (La.1992); Johnson v. Wetherspoon, supra; Bailey v. Bailey, 97-1178 (La.2/6/98), 708 So.2d 354. As we explicitly stated in Sims, "[a] spouse's right to receive an annuity, lump-sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to his employment during the community, therefore an asset of the community." 358 So.2d at 922 (emphasis added).[14] We summarized the basis behind our community property law principles surrounding retirement benefits in Frazier as follows:
(1) an employee's contractual pension right is not a gratuity, but a property interest owned by him; (2) to the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage; (3) the right to share in a retirement plan is a community asset which, at the dissolution of the community, must be so classified  even though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time.
Frazier, supra at 62-63 (citing Sims, supra at 921-22 and T.L. James, supra).
Specifically regarding survivor benefits, T.L. James, and Wetherspoon each held that survivor benefits were community *1044 property under La. C.C. art. 2338. T.L. James was a concursus proceeding brought by a private profit sharing and retirement plan to resolve a dispute regarding survivor benefits. There, this Court held that benefits payable under a retirement plan are earned income and not a gratuity, and are therefore community property. Accordingly, T.L. James held that the employee spouse could not contractually name a beneficiary to the survivor benefits to the prejudice of forced heirs or the community ownership of spouses, both present and former, of the wage earner, because rights of "spouses in community acquisitions are fundamental concepts of our legal system." 332 So.2d at 853 (on rehearing).[15] In Wetherspoon, recognizing this Court's previous decisions that declined to distinguish between retirement and survivor benefits and that held that "any benefit payable by a retirement plan, to the extent attributable to the community, is an asset of the community," we likewise held that survivor benefits were clearly a "benefit payable by a retirement plan". 694 So.2d at 207. Harmonizing the provisions of the Teacher's Retirement System of Louisiana ("TRSLA") statute and our community property laws, we held that survivor benefits payable by TRSLA were an asset the community, regardless of the fact that TRSLA, like LASERS, lists only the surviving spouse and surviving minor and handicapped children as survivor benefit beneficiaries. Id. at 211.[16] Thus, T.L. James and Wetherspoon involved contracts or statutes which distributed a community asset to certain beneficiaries to the exclusion of the owner of the community asset, i.e., the former spouse in the case of Wetherspoon, and the current and former spouses in the case of T.L. James. In each case, this Court held that these contracts and statutes could not operate to deprive the owner of his or her property in violation of La. C.C. art. 2338, which classifies those benefits as community property.[17] Courts of appeal have followed *1045 T.L. James, Sims, and Wetherspoon and have likewise held that survivor benefits are community property under La. C.C. art. 2338 to the extent attributable to the community to be distributed to the former spouse upon the death of the member. See e.g., Smith v. Smith, 36910 (La. App. 2 Cir. 3/14/03), 839 So.2d 1255; Vicknair v. Firefighters' Pension and Relief Fund of New Orleans, et al., 05-0467 (La. App. 4 Cir. 6/15/05), 907 So.2d 787, writ denied, 05-2327 (La.5/26/06), 929 So.2d 1233; Succession of Silbernagel, 96-2755 (La.App. 1 Cir. 2/20/98)), 708 So.2d 485; see also Herrington v. Skinner, 93-1556 (La.App. 3 Cir. 6/1/94), 640 So.2d 748; Kennard v. Kennard, 99-445 (La.App. 3 Cir. 10/06/99), 747 So.2d 628, writ denied, 99-3550 (La.2/25/00), 755 So.2d 252; Ordoyne v. Ordoyne, 94-1766 (La.App. 1 Cir. 4/7/95), 653 So.2d 839, writ denied, 95-1170 (La.6/23/95), 656 So.2d 1018 (all holding that the former spouse's relinquishment in community property settlement of interest in retirement plan also constituted relinquishment of rights to survivor benefits).[18] In fact, only one case and the one relied upon by the court of appeal in this case, Bonfanti v. Percy, 95-1189 (La.App. 1 Cir. 4/6/96), 672 So.2d 415, has distinguished survivor benefits from retirement benefits in a public plan and held that survivor benefits are not community property.[19]
Relying on our long-standing community property doctrine and jurisprudence, attorneys, governmental agencies administering public pension plans, and the public have conducted their affairs in the belief that every benefit of a retirement plan, including survivor benefits, acquired in whole or in part with community effort, is community property co-owned by the spouses and to be shared equally. Accordingly, judges have issued judgments and divorcing spouses have entered into settlements whereby benefits in an employee-spouse's retirement plan are partitioned and valued under the Sims formula, or some other manner, to be paid to the former spouse when the employee-spouse retires, terminates employment, or dies. Recognizing this, La. R.S. 11:291[20], applicable to LASERS *1046 and all other state and statewide plans and entitled "Community Property Interest," provides:
(B) Notwithstanding any other provision of law to the contrary, any benefit or a return of employee contributions shall be subject to a court order issued by a court upon or after termination of a community property regime, which order recognizes the community interest of a spouse or former spouse of a member or retiree of the retirement system and provides that a benefit or a return of employee contributions be divided by the retirement system with the spouse or former spouse, but only after a certified copy of such order has been received by the retirement system and has been determined by the retirement system to be in compliance with applicable laws, rules, and regulations governing the retirement system. (Emphasis added.)
La. R.S. 11:291(B).[21] As can be seen, this statute applies "notwithstanding any other provision of law to the contrary," i.e. La. R.S. 11:471's designation of only the surviving spouse, and surviving minor and handicapped children as statutory beneficiaries. Further, it applies broadly to "any benefit" payable by LASERS, not just retirement benefits. La. R.S. 11:291 recognizes the common circumstance where a former spouse has a community property judgment recognizing her rights to benefits, whether they be retirement or survivor benefits, and mandates that LASERS pay these benefits directly to her, if the court order is certified and LASERS determines that it is in compliance with certain administrative requirements.[22] Accordingly, LASERS statutes, policy, and practice recognize that survivor benefits are payable to more than one person when a community property judgment is in effect which recognizes a former spouse's rights to such benefits. This practice is so *1047 common that LASERS provides "sample court orders" which contain a paragraph allowing the parties to specifically agree to the division of survivor benefits. Likewise, in the LASERS' Membership Handbook, in the section entitled "Survivors' benefits," there is a provision entitled "Benefits payable to more than one person" which states: "Whenever benefits are payable to more than one person due to divorce, or remarriage, the benefit will be split and issued under each recipient's Social Security number. Under La. R.S. 11:291(B), LASERS' actuarial soundness is not affected because it is simply dividing the benefit payable to the statutory beneficiaries with the former spouse. La. R.S. 11:291(B) never requires it to pay more.
Accordingly, in this case, a very specific community property judgment was entered which recognized Diane's interest in the LASERS plan in accordance with the Sims formula. The language and intent of the judgments are clear and unambiguous regarding the words "plan" and "dies," recognizing Dianne's interest in the LASERS plan, not just retirement benefits under the plan, to be calculated and paid by LASERS when and if Joel dies, not just if he retires. Pursuant to La. R.S. 11:291(B), any benefits payable to the surviving spouse and minor child "shall be subject to [this] court order" and LASERS is required to pay the former spouse her share of the benefits as provided by that court order. Because the surviving spouse in this case married a member who had a former spouse entitled by a community property judgment to receive a Sims portion of survivor benefits directly from LASERS, the surviving spouse and minor child's benefit must be split with her according to the terms of that judgment. In this case, Dianne should have been awarded the disputed portion of the survivor benefits according to the amount stipulated to by the parties, $1,144.94 per month, payable for 24 months. The lower courts erred in failing to recognize Dianne's estate's ownership interest in these survivor benefits and in failing to award them to her estate.
Lastly, in an attempt to fashion an equitable remedy after denying Dianne her community property rights in the survivor benefits, the court of appeal ordered LASERS to pay Dianne 50% of the accumulated contributions attributable to the community. This was error. Not only should the court of appeal have found that Dianne was entitled to her share of the survivor benefits, pursuant to La. R.S. 11:475, LASERS may be required to refund accumulated contributions only when "all eligible monthly benefits have ceased." Nothing in the statutes governing LASERS allows the refund of accumulated contributions at the same time LASERS is required to pay survivor benefits, which it is in this case.

CONCLUSION
Louisiana is a community property state. "From the earliest times, the most important legislative policy underpinning the Louisiana community property regime has been that spouses share equally `the produce of the reciprocal labor and industry' or both `husband and wife.'" Ross v. Ross, 02-2984 (La.10/21/03), 857 So.2d 384, 392 (citing 16 Spaht & Hargrave, Louisiana Civil Law Treatise: Matrimonial Regimes, § 3.2 at p. 47 (1997)). This bedrock principle of community property law is found in La. C.C. art. 2338, which classifies "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse" as community property. For 33 years, this Court has consistently held that, pursuant to La. C.C. art. 2338, a spouse's right to receive an annuity, lump-sum benefit or other benefit payable by a retirement plan is, to the *1048 extent attributable to the community, a community asset. T.L. James, supra; Sims, supra; Hare v. Hogkins, supra; Frazier v. Harper, supra; Johnson v. Wetherspoon, supra; Bailey v. Bailey, supra. As a survivor benefit is clearly an "other benefit payable by a retirement plan," it is classified as community property pursuant to La. C.C. art. 2338 and the spouses are co-owners of that benefit. The fact that La. R.S. 11:471, a distribution statute, does not list the former spouse as a mandatory beneficiary of a survivor benefit does not change the classification of that benefit from community property to separate property, and cannot legally serve to deprive the former spouse of her ownership rights to those benefits. While it is laudable for the legislature to provide some benefit for spouses and minor and handicapped children who have lost spouses and fathers while they were employed by the state, this simply cannot be done with a former spouse's property.
In this case, the former spouse has a community property judgment instructing LASERS to pay her judicially recognized share of these survivor benefits directly to her. La. R.S. 11:291(B) applies "notwithstanding" La. R.S. 11:471's designation of only the surviving spouse, and surviving minor and handicapped children as statutory beneficiaries, and provides that "any benefit ... shall be subject to a court order issued by a court upon or after termination of a community property regime... which recognizes the community interest of ... a former spouse ... and provides that a benefit ... be divided by the retirement system with ... the former spouse." The community property judgment granted to Dianne an ownership interest in Joel's LASERS plan, calculated according to the Sims formula, and directed LASERS to pay these benefits directly to her in the event Joel died. La. R.S. 11:291(B) mandates that LASERS pay Dianne these benefits under these circumstances and LASERS attempted to do so. LASERS then filed a concursus proceeding and began paying the benefits to Jane and Joelle after deducting the portion claimed by Dianne. The lower courts erred in failing to recognize Dianne's ownership interest in these survivor benefits, in holding that La. R.S. 11:471's exclusion of former spouses from the list of mandatory statutory beneficiaries deprived her of her community property, and in failing to apply La. R.S. 11:291(B), which clearly directs LASERS to pay a former spouse these survivor benefits when ordered by a community property judgment which meets that statute's requirements. Thus, the trial court's judgment ordering that Jane and Joelle were entitled to "the funds to be deposited to the registry of this Court" pursuant to La. R.S. 11:471 was error. Dianne's estate is entitled to these benefits according to the Sims formula as provided by the community property judgments and in the amount stipulated to by the parties, $1,144.94 per month, for a period of 24 months. Finally, the court of appeal erred in ordering LASERS to pay 50% of the amount stipulated by the parties to be the accumulated contributions attributable to the community in a lump-sum refund to Dianne's estate.

DECREE
For the reasons stated herein, our opinion on original hearing is vacated in its entirety, and the judgment of the court of appeal is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CALOGERO, C.J., and KIMBALL and TRAYLOR, JJ., dissent and assign reasons.
WEIMER, J., additionally concurs and assigns reasons.
*1049 CALOGERO, Chief Justice, Dissenting and Assigning Written Reasons.
Because I believe that we reached the correct result when we found on original hearing in this case that the LASERS survivor benefits at issue do not constitute community property, I respectfully dissent from the majority's decision on rehearing. Although the former spouse in this case has a community property interest in the deceased member's LASERS pension plan, valid methods for protecting that interest exist that would not violate the express statutory provisions that govern distribution of LASERS survivor benefits. Moreover, in its zeal to protect the community property interest of the former spouse in this case, the majority ignores the express statutory rights of the qualified survivors, which are severely prejudiced by the majority's holding.
Although rarely mentioned by lawyers or judges, most legal arguments and conclusions are based on a form of deductive logic that depends on a conditional syllogism. A conditional syllogism consists of a three-part argument that begins with a major premise that is stated as an if-then proposition. This major premise is typically a statement of the principle of law that controls the case. The second part of the deductive argument is a minor premise that, in a legal context, typically applies the legal principle stated in the major premise to the specific facts of the case. What follows is the conclusion. To be valid, a conditional syllogism must consist of these three propositions. By its nature, the conclusion in a valid conditional syllogism necessarily follows from the premises, such that if the premises are true, the conclusion must be true. However, if either or both premises are false, the conclusion is likewise false. In fact, because a major premise includes both an "if" clause and a "then" clause, if either of those clauses is false, the conclusion is false.
A simple example will illustrate. In Louisiana, virtually every finding of tort liability flows from the following conditional syllogism:
Major premise: If the defendant's negligent act caused the plaintiff's damages, then the defendant is liable for the plaintiff's damages.
Minor premise: The defendant's negligent act caused the plaintiff's damages.
Conclusion: Therefore, the defendant is liable for the plaintiff's damages.
The major premise in the above syllogism is true because it is based on a principle of Louisiana law found in La. Civ.Code art. 2315(A).[1] In the typical tort case, the argument revolves around the minor premise.
The majority's conclusion that the former spouse in this case is entitled to receive survivor benefits flows largely from the following conditional syllogism:
Major premise: If retirement benefits paid by LASERS are community property, then survivor benefits paid by LASERS are community property.
Minor premise: Retirement benefits paid by LASERS are community property.
Conclusion: Therefore, survivor benefits paid by LASERS are community property.
As I will show, because the majority's major premise set forth above, and specifically the "then" clause, is false, the majority's conclusion is false.
At the outset, I want to be clear that the "if" clause of the majority's major premise *1050 is true. As the majority states, this court has, since its seminal decisions in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975), and Sims v. Sims, 358 So.2d 919 (La.1978), consistently held that retirement benefits being paid to a retiree by a private or a public pension plan are community property. I signed T.L. James and Sims, and have, since the late 1970's, signed every decision released by this court that has properly applied the principles derived from those decisions. There is no question that retirement benefits being paid by LASERS are community property that is co-owned by spouses and subject to division upon termination of the community. Thus, a former spouse is entitled to receive a so-called Sims portion of retirement benefits due his or her former spouse. This is true despite the fact the former spouse is not listed as a qualified recipient of retirement benefits in the statutes governing distribution of retirement benefits. Significantly, in this case, LASERS never paid any retirement benefits to Mr. McWilliams that would have been subject to Ms. Sanders' Sims portion, because Mr. McWilliams never retired. Instead, he died while he was still employed by the State DOTD, thus triggering LASERS's obligation to pay survivor benefits.
Where the majority errs is in its formulation of the "then" clause in its major premise. It is simply not true that the survivor benefits being paid by LASERS that are at issue in this case are necessarily community property simply because retirement benefits that might have been paid by LASERS would have been community property, had Mr. McWilliams retired before he died. Although some similarities exist between LASERS retirement benefits and LASERS survivor benefits, primarily because they are both benefits paid by LASERS, determination of whether the LASERS survivor benefits are community property should not be based on a finding that the two types of benefits are similar in some ways, especially because the two types of benefits are also significantly different in a number of ways. Determination of whether the LASERS survivor benefits are community property should instead be based on the same criteria used to determine whether any contested item is community property  i.e., an examination of the legal principles governing classification of community property. Thus, the majority should have begun its analysis with the following major premise: "If LASERS survivor benefits do not qualify as `community property' under the language of the applicable codal articles as interpreted by the jurisprudence, then LASERS survivor benefits are not community property." Both the "if" clause and the "then" clause in that major premise are true because they are based on basic principles of Louisiana law. As shown by the discussion below, LASERS survivor benefits simply do not qualify as community property under the applicable codal articles as interpreted by the jurisprudence.
The Louisiana legislature originally adopted statutes governing survivor benefits under Louisiana public pension plans, like LASERS, by 1956 La. Acts, No. 21, for the stated purpose of providing "benefits to the surviving widow or dependent widower or children of any deceased." Pursuant to the statutes governing LASERS pension plans, when a LASERS member dies before he has retired, LASERS is not obligated to pay "retirement benefits." Instead, LASERS has an obligation to do one of two things upon the death of an employed member who has met certain qualifications. Perhaps in the majority of cases, LASERS pays statutorily defined survivor benefits to specified groups of qualified survivors pursuant to rules set forth in La.Rev.Stat. 11:471 through 482. Alternatively, if, upon the *1051 death of an employed LASERS member, there are no qualified survivors under La. Rev.Stat. 11:471, LASERS is obligated, pursuant to La.Rev.Stat. 11:475, to pay a lump-sum refund of "the total accumulated contributions of the member, to the beneficiaries or the estate of the beneficiaries...."
In Louisiana, "[p]roperty of married persons is either community or separate." La. Civ.Code art. 2335. It follows from that statement that a contested item cannot be classified as community property unless it is the "property" of a "married person." Thus, an asset cannot be classified as community or separate until it has first been identified as "property." Robinson v. Robinson, 99-3097, p. 7, (La.1/17/01), 778 So.2d 1105, 1114 (citing K. Spaht & L. Hargrave, Matrimonial Regimes, 16 Civil Law Treatise § 2.1 (1989 & Supp.1991)). By definition, survivor benefits cannot be considered "property" at any time during the existence of a community regime because under the governing codal articles LASERS's obligation to pay survivor benefits is triggered by the death of the LASERS member, at which time the community terminates. La. Civ. Code art. 2356. Further, LASERS survivor benefits do not belong to "married persons" because the only qualified recipients of survivor benefits are surviving spouses (i.e., widows and widowers) and minor or handicapped children. La.Rev.Stat. 11:471. La. Civ.Code art. 2340 provides that "[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community" Certainly, survivor benefits cannot be said to ever be "in the possession of a spouse" during the existence of a community regime.
Moreover, LASERS survivor benefits do not fall under any of the five categories of community property set forth in La. Civ.Code art. 2338. The majority quotes La. Civ.Code art. 2338, but does not explain how LASERS survivor benefits fall within any of the categories of community property identified there. I submit that they do not fit into any of the categories set forth. First, survivor benefits are not "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse" because survivor benefits cannot be said to have been "acquired" during the existence of the community's legal regime. Even if the member is married at the time of his death, the community is terminated when the member dies such that it no longer exists to "acquire" the survivor benefits. Further, the LASERS member never has a right to receive survivor benefits, so they cannot be considered property that the member must share with his former or current spouse.
For the same reason, survivor benefits cannot be considered "property acquired with community things or with community or separate things, unless classified as separate property under Article 2341," the second definition of community property set forth in La. Civ.Code art. 2338. This is true because, as I have shown, survivor benefits are not "acquired" during the existence of the community regime. Likewise, survivor benefits are not "property donated to the spouses jointly" (the third definition of community property) because they are not "donated" and because they do not become due until the member spouse has died, at which time the spouses cannot receive anything "jointly." Neither do LASERS survivor benefits fall into the third, fourth, or fifth categories of community property because are not "natural [or] civil fruits of community property," "damages awarded for loss or injury to a thing belonging to the community," or any type of "other property not classified by law as separate property." As I have said, they *1052 are not "property" at all until after termination of the community. Since they do not fall into any of the categories of community property identified by La. Civ. Code art. 235, LASERS survivor benefits are not community property. The entire three-part syllogism from which that conclusion flows is as follows;
Major premise: If LASERS survivor benefits do not qualify as "community property" under the language of the applicable codal articles as interpreted by the jurisprudence, then the survivor benefits are not community property.
Minor premise: The LASERS survivor benefits do not qualify as community property under the language of the applicable codal articles as interpreted by the jurisprudence.
Conclusion: Therefore, the LASERS survivor benefits are not community property.
The majority describes the issue presented by this case, in pertinent part, as "whether the exclusion of the `former spouse' from the list of persons to whom survivor benefits are to be distributed under La. R.S. 11:471 operates to deprive a former spouse of her community property interest in those benefits...." As the majority correctly notes, former spouses are omitted from the list of qualified, defined survivors. The majority correctly finds that the omission of former spouses from the list of qualified survivors could not, in and of itself, defeat a former spouse's community property right to receive a Sims portion of survivor benefits, if it existed, any more than the omission of former spouses from the persons qualified to receive retirement benefits prevents a former spouse from receiving a Sims portion of those benefits. Such a result would indeed violate Louisiana's overarching community property laws. Rather, the reason former spouses are entitled to receive a portion of retirement benefits, but not survivor benefits, is the fact that retirement benefits qualify as community property under the applicable codal articles as interpreted by the jurisprudence, while survivor benefits do not. As this court has held, retirement benefits are property acquired by the member spouse during the existence of the community that therefore fall into the first category of community property set forth in La. Civ. Code art. 2335. Thus, the statutory provisions governing distribution of retirement benefits are indeed subject to the requirement that a former spouse is entitled to his or her Sims portion of retirement benefits under the basic principles governing division of community property.
On the other hand, because survivor benefits do not qualify as community property under the applicable codal articles as interpreted by the jurisprudence, the statutes governing the distribution of retirement benefits are not subject to the requirement that a former spouse is entitled to receive a portion of survivor benefits. In other words, because LASERS survivor benefits are not community property, the general provisions governing distribution of survivor benefits control without regard for community property concerns. That being the case, a former spouse is not entitled to receive any portion of survivor benefits because former spouses are not qualified recipients of survivor benefits.
I must also comment on a couple of other points made in the majority opinion. As support for its conclusion that LASERS survivor benefits are community property, the majority quotes the following statement from Sims: "A spouse's right to receive an annuity, lump-sum benefit, or other benefits payable by a retirement plan is, to the extent attributable to his employment during the community, therefore *1053 an asset of the community." 358 So.2d at 922. The majority emphasizes the language referring to "other benefits payable by a retirement plan" in support of its conclusion, finding essentially that Sims stands for the proposition that any benefit paid by a retirement plan, such as LASERS, is automatically classified as community property, apparently regardless of whether it fits within any of the recognized categories of community property set forth in La. Civ.Code art. 2335. However, the majority's conclusion ignores another important predicate for finding that a particular benefit is community property expressly recognized in that quote from Sims. According to Sims, "other benefits" are community property only if a "spouse" has a right to receive that other benefit. In the case of LASERS survivor benefits, no "spouse" has a right to receive the benefits because it is the death of the employed LASERS member that triggers LASERS's obligation to pay survivor benefits.
The majority also states that this court's T.L. James decision "held that survivor benefits were community property" under La. Civ.Code art. 2338. Indeed, this court did find in T.L. James that the "benefits" that the retirement plan was required to pay following the death of the employee were community property. However, the term "survivor benefits" does not appear in T.L. James. More significantly, T.L. James involved a private retirement plan, subject to specific contractual provisions, and the court was simply applying community property principles to the contract in that case. This case involves a public retirement plan, subject to statutory provisions. Further, T.L. James is most assuredly not based on an analysis of current La. Civ.Code art. 2338. The case does cite the community property articles and principles applicable at the time the case was decided, but does not stand for the proposition that LASERS survivor benefits at issue here are necessarily community property.
That having been said, I hasten to point out that the very first case ever decided by this court that held that statutory survivor benefits distributed by a public retirement plan qualify as community property was Johnson v. Wetherspoon, 96-0744 (La.5/20/97), 694 So.2d 203, to which I dissented. In fact, in a follow-up proceeding to our Sims decision, the former spouse for whose benefit the Sims formula was derived was in fact denied the right to receive statutory survivor benefits distributed by a public retirement plan. See In re Succession of Sims, 464 So.2d 991 (La.App. 1 Cir.), writs denied, 467 So.2d 532, 541 (La.1985).[2]
In addition to its improper reliance on previous decisions, most of which are in fact readily distinguishable from this case, the majority also relies heavily on La. Rev. Stat. 11:291 to support its conclusion that the former spouse in this case is entitled to receive a portion of the survivor benefits. The language of that provision is indeed broad, but it is not so broad that it can bear the weight of the rule that the majority would derive from it. Yes, La.Rev.Stat. 11:291 does provide generally that "any benefit ... shall be subject to a court order" that recognizes a former spouse's community interest in a retirement plan. However, the statute was designed only to facilitate the division of property that qualifies as community property, and CANNOT logically be interpreted to require the division of a benefit that does not fall into any *1054 of the categories of community property set forth in La. Civ.Code art. 2338. This court should not apply the law mechanically, but should look to the purpose of the provision. Because LASERS survivor benefits are not community property, they are not subject to a community property claim by a former spouse. La.Rev.Stat. 11:291 cannot be read to create a claim where none exists.
Further, the majority completely ignores the fact that, under its decision, the former spouse in this case receives a benefit because of the existence of a surviving spouse and/or surviving minor or handicapped child. If there were no qualified survivors in this case, there would be no survivor benefits and no opportunity for the former spouse to receive a portion of those benefits. Had Mr. McWilliams died without a surviving wife or a surviving minor or handicapped child, the Ms. Sanders claims would have been limited to half of the accumulated contributions to LASERS that are "attributable to the community." I see no logical or legal reason that Ms. Sanders should be entitled to receive additional monies because of the existence of the surviving spouse and child. Her only entitlement at law is to receive half of the accumulated contributions attributable to her community. I would therefore afford Ms. Sanders a right of action for that amount against Mr. McWilliams' estate.
Finally, I would point out what I believe is, in some ways, the most egregious result of the majority decision herein. Under the majority's interpretation, the former spouse in this case is entitled to receive not only a portion of the survivor benefits due to the surviving spouse, but also a portion of the benefits due to the surviving minor child. Even if the majority were correct that the surviving spouse's entitlement to survivor benefits is somehow a community asset (which it is not), I can conceive of no provision of statutory or jurisprudential law that could be manipulated to support a finding that the surviving minor child's right to survivors' benefit is an asset of a community that terminated long before survivor benefits became due to anyone. The absurdity of allowing this former spouse to recoup almost 25 percent of the benefits due the surviving minor child perhaps demonstrates better than anything else the flaw in the majority decision.
Further, the impact of this decision is relatively minor in this case, where the "minor" child was in reality a "major" who was only entitled to receive benefits for a short period of time (between her 18th and 23rd birthdays) because she was a student. However, under the rule established by the majority in this case, the former spouse would receive a Sims portion of the LASERS survivor benefits due the minor child even if that child was only six months old and was totally dependent on those benefits. As I have stated, survivor benefits were adopted by the 1956 Louisiana Legislature for the stated purpose of providing "benefits to the surviving widow or dependent widower or children of any deceased." The majority's decision errs by granting a right to a portion of the benefits designed to provide for dependent widows and children of deceased workers, despite the fact those benefits do not qualify as community property under the applicable codal articles as interpreted by the jurisprudence. The present majority's resolution of the case is not only legally wrong, but is contrary to what the Legislature has commanded. Further, the result is unfair.
KIMBALL, J., dissents.
I dissent from the majority's opinion on rehearing for the reasons expressed in *1055 Justice Traylor's dissent. I would add, however, that although survivors' benefits are not community property, the former spouse does possess a judgment recognizing a community interest in her former husband's retirement plan. In my view, the former spouse can seek to recover the unrealized value of her community property interest, which includes contributions to the retirement plan made during the former community, from her former husband's estate.
TRAYLOR, Justice, dissenting.
I dissent because I have a fundamental difference of opinion as to the characterization of the LASERS survivor benefit at issue. To the extent that the opinion on rehearing finds this particular LASERS survivor benefit to be community property of the LASERS employee, I dissent.[1] LASERS pays, as a perquisite of employment, a determinate amount to statutory survivors. This emolument arises only after the death of the employee. Thus, a LASERS survivor benefit can never be the property of the employee, to whom it can never belong, and is certainly not property belonging to a community which ceased to exist for several years prior to the death of the employee. The only persons entitled to LASERS survivor benefits are identified by statute, La. R.S. 11:471, and are a surviving spouse, a surviving minor child, and a surviving handicapped child.
Until Joel McWilliams died, no one, not even Joel McWilliams, had a vested right in a LASERS survivor benefit. As this court has previously stated in opinions authored by Chief Justice Calogero and Justice Victory, the author of the instant majority opinion on rehearing:
A vested right is defined as that case when "the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit [or a contingent interest in property][2] ... does not constitute a vested right."
Sawicki v. K/S Stavanger Prince, XXXX-XXXX p. 10 (La.12/7/01), 802 So.2d 598, 604, citing Tennant v. Russell, 214 La. 1046, 39 So.2d 726 (1949)[quoting 16 C.J.S., Constitutional Law, § 215, p. 624; see also Smith v. Bd. of Trustees of Emp. Retirement, 2002-2161 p. 9 (La.6/27/03), 851 So.2d 1100, 1106.
No one had the right to enjoyment of the survivor benefit until after Joel McWilliams died and the survivor benefit became the property of the particular persons defined by statute. Being a benefit of a retirement program, the survivor benefit, prior to its vesting in statutorily-defined survivors, could have been eliminated entirely by the retirement program. As this court found in Smith, when discussing changes to reemployment benefits for retirees:
Prior to the achievement of eligibility, courts have deemed the right to be inchoate and the details of a contributory retirement system ... could be modified to the prejudice of the employee.
Id., 2002-2161 p. 11, 851 So.2d at 1107. Similarly, the statutorily-defined survivors did not achieve "eligibility" or entitlement *1056 to the survivor benefit until after Joel McWilliams died. Until that circumstance occurred, the statutorily-defined survivors' right to the benefit was inchoate and the legislature could have changed the requirements of eligibility.
Simply put, the benefit offered by the retirement system did not become property of any kind until the day after the death of the employee[3]  until that time it was a "mere expectancy." The property did not belong to the employee, nor can it be properly characterized as community property. Although this court has recognized as community property the right of a spouse to receive money to become due in the future, even if the right is contingent, based on the effort of a spouse during the community, i.e. Due v. Due, 342 So.2d 161 (La.1977), the survivor benefits at issue here are easily distinguishable. As found in Due, and other cases, the important difference is that the former spouse has the right to receive the money contingently due in the future. Here, Joel McWilliams was not ever entitled to receive the survivor benefit. The survivor benefit was not money due to him and it was not money that was otherwise heritable from him.
Consequently, while the opinion on rehearing holds that La. R.S. 11:471 "does not operate to deprive [Dianne Sanders] of her community property rights to these [survivor] benefits,"[4] I do not believe that the survivor benefits constitute community property in the first place. Thus, the former spouse of decedent Joel McWilliams is not entitled to the survivor benefit because La. R.S. 11:471 does not name former spouses as LASERS survivor benefit beneficiaries. Moreover, because I believe that there is a distinction between retirement and survivor benefits in this case, I would overrule Johnson v. Wetherspoon, XXXX-XXXX (La.5/20/97), 694 So.2d 203, as did the original opinion in this case.
Finally, I disagree with the portion of the opinion on rehearing which finds that the community property partition judgment gives someone greater rights than he or she would have under the law.
For the foregoing reasons, I respectfully dissent from the opinion on rehearing.
WEIMER, J., concurring.
My initial consideration of this case focused on the language of LSA-R.S. 11:471, and was ultimately directed by reading that statute and concluding that pursuant to its language, a former spouse does not meet the definition of a surviving spouse; thus, survivor's benefits are not subject to community property division. I am now convinced that I did not sufficiently consider other laws that touch upon the same subject matter, as directed by LSA-C.C. art. 13. ("Laws on the same subject matter must be interpreted in reference to each other.") Specifically, I did not sufficiently weigh the interplay between LSA-R.S. 11:471 and the civil code articles that define community property and its ownership (LSA-C.C. arts. 2335, 2336, and 2338), as well as the provisions of LSA-R.S. 11:291, which is entitled "Community property interest" and is found in the same title of the revised statutes as the LASERS provisions.
When these provisions are considered together, and harmonized, the inevitable conclusion to be drawn is that the LASERS provisions, LSA-R.S. 11:401 et seq., *1057 do not purport to classify any type of benefit as community property or separate property, but simply provide rules for the distribution of the benefits of the member upon his or her death or retirement. Louisiana Revised Statutes 11:471 is a distribution statute; it allocates, or distributes, that which has been classified by provisions of the Civil Code (LSA-C.C. arts. 2335, 2336, and 2338) as community property. Louisiana Revised Statutes 11:471 does not change the classification of the property itself, unless we are to presume that with LSA-R.S. 11:471, the legislature intended to supplant community property laws and to give to a third party property owned by a former spouse. There is no support for such a presumption in the language of LSA-R.S. 11:471, which clearly speaks to the distribution of the member's interest, mentioning nothing whatsoever about the interest of any non-member, such as a former spouse.
Further, LSA-R.S. 11:291 appears in the section of the revised statutes that addresses public retirement systems generally, under the subpart entitled "Applicability of Certain Court Orders"; LSA-R.S. 11:291 is, at a minimum, a recognition that state retirement plans pay directly to certain persons when ordered to do so by a judgment. The language of the provision, applying as it does to "any benefit" recognized as belonging to the former spouse, is broad enough to include LASERS survivors' benefits. Louisiana Revised Statutes 11:291 is the mechanism provided for disbursement of benefits recognized by community property law to the former spouse. This disbursement statute appears in Title 11, along with LSA-R.S. 11:471, and recognizes a former spouse's interest "[n]otwithstanding any other provision of law to the contrary."
This court's decision in Johnson v. Wetherspoon, 96-0744 (La.5/20/97), 694 So.2d 203, flows from the decisions in Sims v. Sims, 358 So.2d 919 (La.1978), and T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La. 1975), to form an unbroken line of jurisprudence which the legislature has not attempted to alter statutorily. In light of the well-settled rule of statutory interpretation that those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established rules of statutory construction, and with knowledge of the effect of their acts and a purpose in view, the lack of legislative response is revealing. State, Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Division v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment, 94-1872, 94-1914, p. 17 n. 10 (La.5/22/95), 655 So.2d 292, 301 n. 10. As the court noted in Borel v. Young, 07-0419, p. 21 (La.11/27/07), 989 So.2d 42, 65 (on reh'g), once this court has ruled on an issue, we should be extremely reluctant to change our position, as both the legislature and society in general should be able to rely on the finality of our pronouncements. In our civil law jurisdiction, we must always seek a statutory basis for our decisions. In this case such a statutory basis exists, and can be found when the provisions of LSA-R.S. 11:471 are read in conjunction with the civil code articles on the definition and ownership of community property and with LSA-R.S. 11:291. Pursuant to such a reading, it becomes clear that LSA-R.S. 11:471 is a distribution statute, not a classification provision. The provision speaks to distribution of the member's interest; the non-member's interest is not affected. This interpretation of the statute has been applied by the courts and LASERS in the past and has become the expectation and *1058 the custom which should not be disturbed in the absence of action by the legislature.
NOTES
[1] The court based this calculation on the period of creditable service during the community being April 26, 1969 through June 15, 1987. However, this was an error. April 26, 1969 was the date of the parties' marriage; Joel did not begin his State employment until January 10, 1972. The correct period would have been January 10, 1972 through June 15, 1987 and this correction was a stipulation in the concursus proceeding in the 19th Judicial District Court.
[2] La. R.S. 11:471(E)(3) provides that "survivor benefits are payable upon application therefore and become effective as of the day following the death of the member."
[3] This benefit was payable to Joelle pursuant to La. R.S. 11:477(C)(2) which provides that benefits are paid to surviving children who are full time students until they cease to be full time students or reach the age of 23, which ever is earlier.
[4] On July 25, 1993, in correspondence with Joel's attorney before any benefits were paid, the attorney for LASERS wrote to him as follows:

... in this instance it appears to us that it was the intent of the parties that any survivor's benefits be subject to a community property division. A review of the McWilliams judgment signed August 24, 1998, reveals paragraph "B," which states:
Dianne McWilliams' interest in Joel McWilliams' Louisiana State Employees' Retirement System plan is hereby recognized and shall be calculated as follows when and if he retires, terminates employment, or dies ... (emphasis added).
This language leads LASERS to believe that it was the intent of the parties to divide any payment whatsoever with his former spouse, without regard as to what form the payment might take (it could have been a lump sum) or who the recipient might be. This would include survivor benefits. LASERS, upon request, provides sample court orders for use in dividing benefits. Part of those samples contain a paragraph ("Alternative Clause 3") which, if included, allows the parties to specifically agree to the division of survivor benefits. Although this particular court order did not incorporate the LASERS formulary, it appears to us to contemplate the occasion of payments from LASERS upon the member's death. (Emphasis added.)
[5] The record is unclear concerning whether LASERS deposited any money into the registry of the court; however, there is sufficient evidence to calculate the disputed portion of benefits claimed by Dianne. The parties stipulated that the portion of Joel's retirement plan attributable to his community with Dianne was 24.60 %, and that, if Dianne is entitled to survivor benefits, her monthly entitlement would be $1,14.94. Dianne died on May 19, 2005, almost exactly 2 years after Joel's death on May 24, 2003. Thus, Dianne's estate's claim for benefits is $27,478.56, which is $1,144.94 times 24 months.
[6] The LASERS Member Handbook states:

Survivor benefits cannot exceed 75% of members final average compensation. If there is a benefit for a surviving spouse and qualified surviving children, the surviving spouse receives one-third of the total benefit payable, and the children receive two-thirds of the total benefits. If there is more than one surviving child, the children's portion is divided equally among all children.
[7] La. R.S. 11:471, entitled "Survivor's benefits," provides:

A. Surviving minor children. Benefits for the surviving children of members shall be calculated as set forth in this Section. The benefit or benefits shall be based on the average compensation of the member. A benefit shall be payable to surviving unmarried minor children of a member who had at least five years of creditable service, at least two years of which was earned immediately prior to death, and was in state service at the time of death or had twenty years or more of service credit regardless of when earned and whether the deceased member was in the state service at the time of death.
B. Surviving handicapped children. (1) The surviving totally physically handicapped or mentally disabled child or children of a deceased member, whether under or over the age of eighteen years, shall be entitled to the same benefits, payable in the same manner, as are provided by this Section for minor children, if the child was totally physically handicapped or mentally disabled at the time of the death of the member and is dependent upon the surviving spouse or other legal guardian.
(2) The applicant shall provide adequate proof of handicap or mental disability of such surviving child or children and shall notify the board of any subsequent changes in the child's condition to such an extent that the child is no longer dependent upon the surviving spouse or legal guardian and any changes in the assistance being received from other state agencies. The board may require a certified statement of the child's eligibility status at the end of each calendar year.
C. Surviving spouse. A benefit shall be payable to the surviving spouse of a member who had at least ten years of creditable service, at least two years of which was earned immediately prior to death, and was in state service at the time of death or had twenty years or more of service credit regardless of when earned and whether the deceased member was in the state service at the time of death. The surviving spouse must have been married to the deceased member for at least one year prior to the death of the member. The benefit shall be based on the average compensation of the member as set forth in Subsection D of this Section.
D. Benefit. Surviving spouses, minor children, handicapped children, and mentally disabled children who qualify under this Section shall be eligible for benefits as follows:
(1) A minor or handicapped child, or mentally disabled child, when there is no surviving spouse, shall receive the greater of seventy-five percent of the deceased member's average compensation or three hundred dollars.
(2) A surviving spouse, with no surviving minor or handicapped child, or mentally disabled child, shall receive the greater of fifty percent of the deceased member's average compensation or two hundred dollars.
(3) A surviving spouse who has custody of a minor or handicapped child, or mentally disabled child shall receive the greater of twenty-five percent of the deceased member's average compensation or one hundred dollars, and the surviving minor or handicapped child shall receive the greater of fifty percent of the deceased member's average compensation or two hundred dollars.
(4) A surviving minor or handicapped child or mentally disabled child not in the custody of a surviving spouse shall receive the greater of fifty percent of the deceased member's average compensation or three hundred dollars, and the surviving spouse shall receive the greater of twenty-five percent of the deceased member's average compensation or one hundred dollars.
E. Limitations and application. (1) In the event the deceased member is survived by more than one minor child, handicapped child, or mentally disabled child, such children shall share equally in the benefit.
(2) In no event shall the survivors of a member receive benefits which, in total, exceed seventy-five percent of the deceased member's average monthly compensation.
(3) Qualifying survivor's benefits are payable upon application therefor and become effective as of the day following the death of the member.
[8] The trial judge stated in oral reasons for judgment that it was "not the proper court to interpret" the 1989 judgment and the 1998 amended judgment issued by the 21st Judicial District Court.
[9] Dianne married Richard Sanders. She died while this appeal was pending. Her estate, represented by Richard Sanders, was then substituted as a party in these proceedings.
[10] La. R.S. 11:441(A)(1)(d) also provides any member shall be eligible for retirement if he has:

Twenty years of service credit at any age, exclusive of military service and unused annual and sick leave, but any person retiring under this Paragraph shall have his benefit, inclusive of military service credit and allowable unused annual and sick leave, actuarially reduced from the earliest age that he would normally become eligible for a regular retirement benefit under Paragraph (1), (2) or (3) of this Subsection, if he had continued in service to that age. Any employee who elects to retire under the provisions of this Paragraph shall not be eligible to participate in the Deferred Retirement Option Plan or the Initial Benefit option provided by La. R.S. 11:446(A)(5).
[11] La. R.S. 11:231 sets forth the definition of "average compensation" in part as follows:

For purposes of retirement benefit computation, average compensation, or its equivalent, shall be based on the thirty-six highest successive months of employment where interruption of service occurred....
[12] To qualify for a benefit as a "surviving spouse," La. R.S. 11:471 requires the following:

C. Surviving spouse. A benefit shall be payable to the surviving spouse of a member who had at least ten years of creditable service, at least two years of which was earned immediately prior to death, and was in state service at the time of death or had twenty years or more of service credit regardless of when earned and whether the deceased member was in the state service at the time of death. The surviving spouse must have been married to the deceased member for a least one year prior to the death of the member. The benefit shall be based on the average compensation of the member as set forth in Subsection D of this Section.
Further, "spouse" is defined by La. R.S.11:403(26) as a person who is legally married to a member of the system.
[13] Article 2402 of the Louisiana Civil Code (1870) provided, in part, that the partnership or community of acquets and gains consisted "of the produce of the reciprocal industry and labor of both husband and wife."
[14] Furthermore, the Sims court explained:

[O]ur courts have uniformly held that, at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit sharing or contract, if and when they become payable, with the spouse's interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community.
Id. at 922. Since Sims, this Court and the Legislature have recognized that the method set forth in Sims for the division of community property is not the only technique that may be applied to divide pension benefits. See Hare v. Hodgins, 586 So.2d 118 (La.1991); La. R.S. 9:2801.
[15] The Court in T.L. James pointed out that the former spouse was impleaded as a claimant to the survivor benefits and that "[h]ad she asserted any claim, her community ownership rights to share in the funds would be recognized on the basis of contributions made to the funds during the existence of the first community."
[16] In Wetherspoon, we expressly rejected the exact argument that was posed in this case, that "... because [TRSLA] directs payment of survivor benefits solely to the surviving spouse, the legislature intended to exclude any and all other claimants." In rejecting this argument, the Wetherspoon decision states:

However, the defendant's petition fails to recognize that La. R.S. 11:768, which provides for the payment of retirement benefits, contains language similar to that found in the survivor benefits statute. La. R.S. 11:768 states: "[u]pon service retirement, a member who retires ... shall receive an allowance ..."
Thus, were we to subscribe to this reasoning, one would have to agree that the legislature also intended to make "members" a statutorily defined class of persons entitled to retirement benefits, to the exclusion of all other claimants. However, as stated earlier, this interpretation is not tenable in light of this Court's holdings that a former spouse is entitled to her share of the retirement benefits payable to a plan member to the extent those benefits are attributable to time spent and contributions made by the former community.
Id. at 210 (cites omitted). We also pointed out that if La. R.S. 11:762 were interpreted to exclude the former spouse's community property rights, then the only instance where the former spouse would not be entitled to her share of benefits from the retirement plan would be where the member spouse remarries and then dies before he retires.
[17] Wetherspoon involved an unpartitioned community, wherein TRSLA had been paying survivor benefits to the surviving spouse for ten years before the former spouse filed suit against the surviving spouse seeking her share of the survivor benefits. This Court was then left to decide whether the former spouse was nonetheless entitled to the survivor benefits by virtue of our community property laws and longstanding jurisprudence. This case is distinguishable in that here, the former spouse has a community property judgment partitioning the former community and specifically granting her a Sims share in the LASERS plan in the event of her former husband's death, and she sought these benefits directly from LASERS before they had been paid to the surviving spouse and minor children.
[18] Also significant is La. R.S. 11:477, entitled "Limitation on Payments of Benefits," which provides:

(E) If by operation of law or by action of the Board of Trustees, a survivor benefit is payable to a specified person or persons, the member shall be considered to have designated such person as an alternative beneficiary thereunder. If there is more than one such person, then the youngest such person shall be considered to have been so designated.
This illustrates that the legislature did not intend that the list of qualified survivors entitled to receive survivor benefits under La. R.S. 11:471 were the only persons ever entitled to receive such benefits, as La.R.S. 11:477(E) envisions that survivor benefits can also be payable to a person "by operation of law," i.e., La. C.C. art. 2338. Such is the case here.
[19] Bonfanti was not a case involving claims between a spouse and former spouse, but was instead a succession case involving a will and Mr. Bonfanti's mother's inheritance of "one-third of his residuary interest in community property."
[20] La R.S. 11:291 is found in Title 11 of the Revised Statutes entitled "Consolidated Public Retirement Systems." It is in Title 11 that the LASERS statutes are located. Subtitle I contains the "General and Preliminary Provisions," and Chapter 4 of Subtitle I contains "Provisions Affecting More Than One System." Subpart L of Subtitle I is titled "Applicability of Certain Court Orders." It is here that La. R.S. 11:291, titled "Community property interest," is located. Accordingly, La. R.S. 11:291 is a general provision applicable to LASERS as well as the other public retirement plans.
[21] While federal law, specifically ERISA and REA applicable to federal and private plans, generally preclude the classification of the "qualified joint and survivor annuity" as community property and preempt Louisiana community property law, see Boggs v. Boggs, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997), ERISA and REA provide an exception to that preemption where an ex-spouse has a qualified domestic relations order, or "QDRO," establishing her claim to these survivor benefits. As explained by the United States Supreme Court in Boggs:

A QDRO is a type of domestic relations order that creates or recognizes an "alternative payee's right to, or assigns to an alternative payee the right to, a portion of the benefits payable with respect to a participant under a plan. § 1056(d)(3)(B)(i). A domestic relations order, in turn, is any judgment, decree, or order that concerns "the provisions of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and is "made pursuant to a State domestic relations law (including a community property law)." § 1056(d)(3)(B)(ii). A domestic relations order must meet certain requirements to qualify as a QDRO. See §§ 1056(d)(3)(C)(E). QDRO's, unlike domestic relations orders in general, are exempt from both the pension plan anti-alienation provision, § 1056(d)(3)(A), and ERISA's general preemption clause. § 1144(b)(7). In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant" is to be considered a plan beneficiary. §§ 1056(d)(3)(K).
520 U.S. at 846-47, 117 S.Ct. 1754.
[22] Section (D) of that statute provides that the retirement system may "promulgate rules establishing requirements with which a court order must comply." La. R.S. 11:291(D).
[1] La. Civ.Code art. 2315(A) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
[2] Whether a former spouse might be entitled to receive a portion of a "survivors' benefit" under the express contractual provisions of a private pension plan must be decided on a case-by-case basis, depending on the language of the private contracts governing those plans.
[1] I make the distinction that my dissent is based on the manner in which the LASERS survivor benefit is determined; there may be some other survivor benefit that might qualify as community property, depending on how it is structured.
[2] This bracketed portion is contained within the original quotation in Tennant v. Russell, supra.
[3] See http://www.lasters.state.la.us, Louisiana State Employees' Retirement System, Survivor Benefits handbook, p. 5 ("Survivor's benefits become effective the day after death.").
[4] Opinion on rehearing, p. 1042.